**SAN FRANCISCO BAYKEEPER,
INC., Plaintiff–Appellant,**

v.

**TOSCO CORPORATION, Diablo
Services, Inc., Defendants–
Appellees.**

**No. 01–15939.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 2002.

Filed Nov. 1, 2002.

Robert S. Perlmutter, Shute, Mihaly and Weinberger, San Francisco, CA; H. Sinclair Kerr, Jr., Timothy J. Fox, Kerr & Wagstaffe LLP, San Francisco, CA; Leo P. O'Brien, Waterkeepers Northern California, San Francisco, CA, for the appellant.

John J. Lyons, James L. Arnone, Evelyn Heidelberg, Latham and Watkins, Los Angeles, CA; Sandi L. Nichols, Lawrence S. Bazel, Christopher J. Carr, Stoel Rives, LLP, San Francisco, CA, for the appellees.

Michael Axline, Western Environmental Law Center, Eugene, OR, for the amicus.

Before: GOODWIN, Senior Circuit Judge, and THOMAS and W. FLETCHER, Circuit Judges.

## OPINION

WILLIAM A. FLETCHER, Circuit Judge.

This case presents the questions of whether a citizen plaintiff under the Clean Water Act must always notify the defendant of the specific dates of alleged violations in order to pursue claims for those violations, and whether that plaintiff can maintain a suit against a defendant firm that no longer operates the polluting facility at issue.

We hold that as long as a notice letter is reasonably specific as to the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement. The letter does not need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem. We also hold that a plaintiff can still pursue civil penalties against a defendant even though the defendant no longer owns and operates the source of pollution. Because of the important deterrent function of civil penalties under the Clean Water Act, a defendant cannot escape liability arising out of past violations by selling a polluting facility that continues to operate.

I

San Francisco BayKeeper, Inc. ("BayKeeper") appeals the district court's grant of summary judgment in favor of Tosco Corporation and Diablo Services Corporation (collectively "Tosco") in its suit alleging violations of the Clean Water Act. *See* 33 U.S.C. §§ 1251–1387. When the suit was filed, Tosco owned and operated a petroleum coke storage and loading facility (the "Diablo facility") located in Pittsburg, California near New York Slough, a navigable waterway that flows into the San Francisco Bay. Petroleum coke, a by-product of the petroleum refining process, is

stored at the Diablo facility and then loaded onto ships that travel over the New York Slough into the Bay.

BayKeeper is a nonprofit corporation "dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay." On September 2, 1999, BayKeeper notified Tosco of its intention to file suit for violations of the Clean Water Act, and on January 24, 2000, BayKeeper filed suit. BayKeeper claimed that Tosco had allowed illegal discharges of petroleum coke to enter the New York Slough, alleging, among other things, that Tosco stored petroleum coke in large uncovered piles at the Diablo facility, and that this method of storage allowed coke to be carried into the slough by wind and rain. BayKeeper further alleged that Tosco's careless procedures for loading coke onto ships caused coke to spill into the slough. BayKeeper sought injunctive and declaratory relief, civil penalties, and attorneys' fees under the Clean Water Act.

The Clean Water Act prohibits discharge of pollutants into navigable waterways except as authorized by the statute. The Act is largely administered through the National Pollution Discharge Elimination System ("NPDES") permit program, under which states are authorized to issue and administer NPDES permits. 33 U.S.C. § 1342(b). Any discharge of pollutants not allowed by an NPDES permit is illegal. *Id.* § 1311(a). The California State Water Resources Control Board issues a General Permit that regulates discharges into California waters. Industrial facilities in California must either comply with the requirements of the General Permit or obtain an individualized NPDES permit allowing a variance.

Those who violate the Clean Water Act and its implementing NPDES permit program are subject to a variety of sanctions.

Among other things, a court may order payment of

a civil penalty not to exceed $ 25,000 per day for each violation. In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.

*Id.* § 1319(d).

The Act authorizes the EPA Administrator to file suits against polluters. *Id.* § 1319(b). The Clean Water Act also authorizes "any citizen" to sue "any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter or . . . an order issued by the Administrator or a State with respect to such a standard or limitation." *Id.* § 1365(a). The citizen suit provision allows plaintiffs to seek injunctive relief, civil penalties, and attorneys' fees. *Id.* § 1365(a), (d). If civil penalties are awarded in citizen suits, they are payable not to the citizen plaintiff but to the U.S. Treasury. *Id.* § 1365(a); *Friends of the Earth v. Laidlaw,* 528 U.S. 167, 175, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

In this case, Tosco moved to dismiss the suit on the ground that BayKeeper did not give adequate notice as required by the statute. The district court denied the motion but held that BayKeeper had failed to describe the dates of certain violations with adequate specificity. It therefore limited BayKeeper's claim to violations that, in its view, had been sufficiently described in the notice.

On August 31, 2000, seven months after the commencement of the suit, Tosco sold the Diablo facility to Ultramar Diamond Shamrock Corporation ("Ultramar").

Tosco then moved for summary judgment on the grounds that the case became moot once it sold the Diablo facility. The district court agreed. In granting summary judgment to Tosco, it concluded that "in this case, where Tosco no longer owns or operates the facility, it is absolutely clear that the alleged violations cannot reasonably be expected to recur."

BayKeeper timely appealed both the district court's limitation of the suit to violations on certain dates its dismissal based on mootness. We address each issue in turn.

## II

■ We review the district court's ruling on sufficiency of notice de novo. *See Cmty. Ass'n v. Bosma Dairy*, 305 F.3d 943, 949 (9th Cir.2002); *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1353 (9th Cir.1995). The district court limited BayKeeper's ability to pursue certain alleged violations because it found that BayKeeper's notice letter did not adequately notify Tosco of the nature of those violations. We disagree and hold that BayKeeper's notice was sufficiently specific as to all of the alleged violations.

The Clean Water Act requires citizen plaintiffs to notify defendants of their intent to sue at least sixty days before filing suit. 33 U.S.C. § 1365(b)(1)(A).[1] The Act authorizes the EPA Administrator to prescribe the manner of the notice. *Id.* § 1365(b). Regulations promulgated under that authorization instruct that the notice

> shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the al-

leged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). The notice requirement and the 60–day delay are intended to give government regulators an opportunity to take action, and to give alleged violators an opportunity to comply with the Clean Water Act. *See Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59–61, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

In *Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), the Supreme Court held that a citizen suit under the Clean Water Act must be dismissed if the plaintiff fails to give the required notice under the Act. In declining to "create an exception" to the notice requirements, *id.* at 27, 110 S.Ct. 304, the Court sought to further the congressional goals of allowing "Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits," as well as giving "the alleged violator an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit," *id.* at 29, 110 S.Ct. 304 (internal quotation marks omitted).

Following *Hallstrom*, we have "strictly construed" the notice requirements for citizen suits under the Clean Water Act. *Natural Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 998 (9th Cir.2000). In *Washington Trout*, we affirmed the dismissal of a citizen suit where the notice letter failed to give the identity and contact information of the plaintiffs. *See* 45 F.3d at 1355. In that case, because the defendants did not know the identities of the plaintiffs, "they were not in a position

---

1. The Act also requires the plaintiff to give notice of the alleged violation to the Adminis-

trator of the EPA and to the State in which the alleged violation occurred. *Id.*

to negotiate with the plaintiffs or seek an administrative remedy. This made any sort of resolution between the parties during the notice period an impossibility." *Id.* at 1354.

■ The regulation does not require, however, that plaintiffs "list every specific aspect or detail of every alleged violation." *Bosma Dairy,* at 951 (quoting *Pub. Interest Research Group v. Hercules, Inc.,* 50 F.3d 1239, 1248 (3d Cir.1995)). "The key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." *Id.* at 951. Notice is sufficient if it is specific enough "to give the accused company the opportunity to correct the problem." *Id.* at 952 (quoting *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.,* 116 F.3d 814, 819 (7th Cir.1997)). In short, the Clean Water Act's notice provisions and their enforcing regulations require no more than "reasonable specificity." *Catskill Mtns. Chapter of Trout Unlimited, Inc. v. New York,* 273 F.3d 481, 488 (2d Cir.2001).

The district court found BayKeeper's notice letter sufficient in all respects, except for the specificity with which BayKeeper provided the dates of some of the alleged violations. BayKeeper's letter notified Tosco that it intended to sue for two types of "direct" discharges of petroleum coke after September 1, 1994:(1) coke spilled during ship loading, and (2) coke blown by the wind into the water from uncovered piles. BayKeeper alleged that the loading violations took place "on each day on which [the] loading operations have taken place." BayKeeper did not have access to complete records of the dates of loading operations, but it did list fourteen dates in 1998 and 1999 when Coast Guard records showed that ships had been docked at the Diablo facility. It alleged that the wind-blown violations took place

"on each day when the wind has been sufficiently strong to blow coke from the piles into the slough."

In addition to direct discharges from spillage and wind, BayKeeper alleged that Tosco was responsible for storm water pollution. According to BayKeeper, rain came into contact with uncovered coke piles and then carried contaminants directly into the slough, or into the storm drain system which flowed into the slough. BayKeeper provided a list of 190 dates between 1994 and 1999 when the San Francisco Bay area received more than one-tenth of an inch of rain. BayKeeper alleged that Tosco had failed to implement best available technology to reduce storm water pollution as required by California's General Permit.

The precise issue before us is whether BayKeeper's notice letter provided "sufficient information to permit the recipients to identify ... the date or dates" of the alleged violations. 40 C.F.R. § 135.3(a). Where BayKeeper alleged an ongoing violation of Tosco's obligation to implement best available technology to prevent storm water pollution, no specific dates were needed. *See Southwest Marine,* 236 F.3d at 996. Notice of pollution that allegedly occurred during ship loading and on windy days requires more discussion.

■ We hold that BayKeeper's allegation that coke spilled into the slough on each day of ship loading—even on days for which BayKeeper did not provide specific dates—was sufficiently specific to fulfill its notice obligation. Tosco is obviously in a better position than BayKeeper to identify the exact dates, or additional dates, of its own ship loading. The notice regulation does not require BayKeeper in such a situation to provide the exact dates of alleged violations; rather, it requires only that BayKeeper provide "sufficient information *to permit the recipients* to identify

... the date or dates." 40 C.F.R. § 135.3(a) (emphasis added). Given the knowledge that Tosco already had, Bay-Keeper's letter was specific enough to notify Tosco of the nature of the alleged violations, as well as the likely dates of those violations.

Were there any doubt on this point, our recent decision in *Bosma Dairy* (issued after the district court's ruling) unequivocally settles the question in BayKeeper's favor. The plaintiff in *Bosma Dairy* listed some dates of violations in its notice letter and then added additional dates of similar violations in its complaint. *See Bosma Dairy*, at 951–52. Because the additional violations were "from the same source, were of the same nature, and were easily identifiable," we found the plaintiff's notice adequate. *Id.* at 953. We therefore hold in this case that, in addition to the specific dates of ship loading violations listed in its notice letter, BayKeeper can pursue claims for such violations on other dates within the overall period specified in the letter.

The closer question is whether Bay-Keeper can pursue its claim that Tosco was responsible for illegal discharges "on each day when the wind has been sufficiently strong to blow coke from the piles into the slough." BayKeeper did not provide any specific dates other than the general date range covered by its notice letter. BayKeeper's notice did, however, clearly identify the alleged violation—namely, that during the time when the coke piles remained uncovered, wind blew coke into the slough. BayKeeper's notice was "sufficiently specific to inform [Tosco] about what it is doing wrong." *Southwest Marine*, 236 F.3d at 996. It was also specific enough to give Tosco an "opportunity to correct the problem," *Bosma Dairy*, at 952, by enclosing or covering the coke piles. We hold, therefore, that BayKeeper's notice with respect to wind-related discharges was sufficient, and that Bay-Keeper can pursue those claims at trial.

## III

We review questions of mootness de novo. *See Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000), *cert. denied,* 532 U.S. 1051, 121 S.Ct. 2192, 149 L.Ed.2d 1024 (2001). Tosco argues that this case is moot because it sold the Diablo facility to Ultramar after Bay-Keeper filed suit. To establish mootness, a defendant must show that the court cannot order any effective relief. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); *American Rivers v. National Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir.1997). Defendants claiming mootness must satisfy a "heavy burden of persuasion." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

The Supreme Court's holding in *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), is the touchstone for an analysis of mootness in citizen suits under the Clean Water Act. In that case, the Fourth Circuit had found a citizen's suit against Laidlaw moot because the Clean Water Act violations had ceased, reasoning that civil penalties paid to the government would not provide any effective relief to the plaintiff. 149 F.3d 303, 306–07 (4th Cir.1998). The Supreme Court reversed.

The Court wrote that civil penalties under the Clean Water Act "serve, as an alternative to an injunction, to *deter future violations* and thereby redress the injuries that prompted a citizen suitor to commence litigation." *Laidlaw*, 528 U.S. at 174, 120 S.Ct. 693 (emphasis added). That a defendant ceases illegal conduct following the commencement of suit "ordinarily does not suffice to moot a case"

because civil penalties still serve as a deterrent to future violations. *Id.* Post-commencement compliance may moot claims for injunctive relief, but district courts can still impose civil penalties for violations that have already taken place. *Id.* at 192, 120 S.Ct. 693. Only when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" will events following the commencement of a suit moot a claim for civil penalties. *Id.* at 189, 120 S.Ct. 693 *(quoting Concentrated Phosphate,* 393 U.S. at 203, 89 S.Ct. 361).

After the Fourth Circuit's ruling in *Laidlaw* but before the Supreme Court heard argument, the polluting facility at issue had been "permanently closed, dismantled, and put up for sale, and all discharges from the facility had permanently ceased." *Laidlaw,* 528 U.S. at 179, 120 S.Ct. 693. The Supreme Court held that even the intervening plant closure might not moot the claim for civil penalties, and therefore remanded the case for further factual findings. According to the Court, only if the defendant could show that the dismantling of its plant made it absolutely clear that no violations would recur, could it meet the "stringent" requirements of mootness doctrine. *Id.* at 189, 193–94, 120 S.Ct. 693.

■ The Court's opinion in *Laidlaw* emphasizes the role of civil penalties as a deterrent. Completely dismantling a polluting facility might eliminate the need for the deterrent effect of civil penalties, but merely selling a facility to another operator ordinarily will not. The Diablo facility is still operating, and there is a possibility that violations will recur at the facility. That a new owner has taken over the facility does not make "the deterrent effect of civil penalties any less potent," *Ecological Rights Found. v. Pacific Lumber Co.,* 230 F.3d 1141, 1153 (9th Cir.2000), because an imposition of civil penalties against Tosco for its pollution at the facility will demonstrate to Ultramar and any future owner that violations at this same facility will be costly.

Liability for civil penalties attaches at the time of the violation. *Id.* Allowing polluters to escape liability for civil penalties for their past violations by selling their polluting assets would undermine the enforcement mechanisms established by the Clean Water Act. Were we to find this case against Tosco moot, not only would Tosco be able to escape the consequences of its pollution, but any subsequent owner could continue the illegal pollution, confident in its ability to escape any potential monetary sanctions by re-selling the Diablo facility in its turn. A finding of mootness here could thus allow repeated violations that would evade review, and would substantially weaken the ability of citizen suits and civil penalties to police and deter the conduct forbidden under the Act. That Ultramar has settled its own Clean Water Act suit with BayKeeper, arising out of alleged post-sale violations at the Diablo facility, does not alter our mootness analysis. Indeed, it reinforces our conclusion by making clear the very real possibility that continued operation of the Diablo facility by a new owner would result in further violations of the Act.

For the foregoing reasons, we hold that BayKeeper has provided sufficient notice of all the alleged violations of the Clean Water Act for which it seeks a remedy, and that BayKeeper's claim for civil penalties is not moot.

REVERSED and REMANDED.