375 F.3d 913
 WATERKEEPERS NORTHERN CALIFORNIA, a non-profit corporation dba Deltakeeper; Bill Jennings, Plaintiffs-Appellants,
v.
AG INDUSTRIAL MANUFACTURING INC.; Claude E. Brown, Defendants-Appellees.
Waterkeepers Northern California, a non-profit corporation dba Deltakeeper; Bill Jennings, Plaintiffs-Appellees,
v.
AG Industrial Manufacturing Inc.; Claude E. Brown, Defendants-Appellants.
 No. 03-15023.
 No. 03-15631.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 2004.
 Filed July 16, 2004.
 
 Andrew L. Packard, Eric Wildgrube and Katharine Essick, Law Offices of Andrew L. Packard, and Leo O'Brien and Shana Lazerow, WaterKeepers Northern California, San Francisco, CA, for the plaintiffs-appellants.
 Dennis M. Hauser, Hauser & Mouzes, Woodbridge, CA, for the defendants-appellees.
 Dennis M. Hauser, Hauser & Mouzes, Woodbridge, CA, for the defendants-appellants.
 Robert S. Perlmutter and Erin Ryan, Shute, Mihaly & Weinberger LLP, Andrew L. Packard, and Leo O'Brien and Shana Lazerow, WaterKeepers Northern California, San Francisco, CA, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of California; Morrison C. England, District Judge, Presiding. D.C. No. CV-00-01967-MCE(PAN).
 Before: B. FLETCHER, REINHARDT, Circuit Judges, and RESTANI, Chief IT Judge.*
 BETTY B. FLETCHER, Circuit Judge.
 
 
 1
 Plaintiffs WaterKeepers Northern California and Bill Jennings (collectively, "WaterKeepers") appeal the district court's dismissal of their Clean Water Act suit for lack of jurisdiction. Defendants AG Industrial Manufacturing and Claude E. Brown (collectively, "AG Industrial") cross-appeal the district court's denial of their motion as prevailing parties for attorney's fees. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's dismissal in part, affirm in part, and affirm the district court's denial of attorney's fees.
 
 I.
 
 2
 WaterKeepers Northern California is a non-profit corporation dedicated to protecting wildlife and preserving natural resources in the San Francisco Bay and the Sacramento-San Joaquin Delta ("the Delta"). Bill Jennings is the director of DeltaKeeper, a WaterKeepers Northern California project focused specifically on the Delta. AG Industrial Manufacturing is a California company that produces farm machinery and equipment for the wine grape industry. The company was formed in 1980 and now employs approximately forty people at its Lodi facility. Claude E. Brown is the company's CEO and one of its two shareholders.
 
 
 3
 On June 28, 2000, WaterKeepers sent AG Industrial notice of its intent to sue for violations of the Clean Water Act ("the Act"). More than sixty days later, WaterKeepers filed this suit, alleging numerous continuing or recurring violations of the Act at AG Industrial's Lodi facility. The parties briefed the merits of WaterKeepers' claims in the district court, and each side submitted a motion for summary judgment. Without reaching the merits, however, the district court concluded that the suit had to be dismissed because WaterKeepers' intent-to sue letter provided insufficient notice of its claims. In a second order, the district court denied AG Industrial's motion for prevailing party attorney's fees. Although the district court found AG Industrial to be a prevailing party, it declined to award fees because it could not say that WaterKeepers' claims were "frivolous, unreasonable, or without foundation." See Razore v. Tulalip Tribes, 66 F.3d 236, 240 (9th Cir.1995) (adopting this standard for attorney's fees motions under the Clean Water Act).
 
 
 4
 We address the notice letter and attorney's fees issues in turn, but we begin with an explanation of the relevant statutory and regulatory background.
 
 II.
 
 5
 Congress enacted the Clean Water Act in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251; S. Florida Water Mgmt. Dist. v. Miccosukee Tribe of Indians, ___ U.S. ___, ___, 124 S.Ct. 1537, 1541, 158 L.Ed.2d 264 (2004). The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; San Francisco BayKeeper, Inc. v. Tosco Corp., 309 F.3d 1153, 1156 (9th Cir.2002), cert. dismissed, 539 U.S. 924, 123 S.Ct. 2296, 156 L.Ed.2d 147 (2003). The Act is administered largely through the National Pollution Discharge Elimination System ("NPDES") permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub.L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); see also Envtl. Def. Ctr., Inc. v. EPA, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme), cert. denied, 72 U.S.L.W. 3513 (U.S. June 7, 2004). The discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal. Ecological Rights Found. v. Pacific Lumber Co., 230 F.3d 1141, 1145 (9th Cir.2000).
 
 
 6
 Much of the responsibility for administering the NPDES permitting system has been delegated to the states. See 33 U.S.C. § 1342(b); see also Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). States may issue individual permits to industrial dischargers or may cover many dischargers under the terms of one general permit. See 40 C.F.R. § 122.26(c); Envtl. Def. Ctr., 344 F.3d at 853 (describing the general permit model). California has issued a general permit to cover industrial dischargers. State Water Resources Control Board, Water Quality Order No. 97-03-DWQ: NPDES General Permit No. CAS000001 (the "General Permit" or "Permit"); Ecological Rights Found., 230 F.3d at 1145. In order to be covered under California's General Permit, individual dischargers must file a notice of intent with the state. General Permit at 1-2 ¶ 3.
 
 
 7
 The parties to this case agree that AG Industrial falls within an industrial classification under the Act and General Permit for which no specific pollutant effluent limitations have been set. Nonetheless, California's General Permit requires AG Industrial to identify and implement "best management practices" ("BMPs"),[1] id. at 4 ¶ B.3, and generally prohibits all non-storm water discharges, with a few exceptions for activities such as fire hydrant flushing and landscape watering. Id. at 3 ¶ A.1, 5 ¶ D.1. The Permit also requires dischargers to develop and implement an effective Storm Water Pollution Prevention Plan ("SWPPP"), id. at 11-23 ¶ A.1-A.10, and to develop and implement a comprehensive monitoring and reporting program. Id. at 24-35 ¶¶ B.1-B.15.
 
 
 8
 Private citizens may sue under the Clean Water Act to enforce the specific provisions of California's General Permit. 33 U.S.C. § 1365(a)(1), (f)(6); Russian River Watershed Prot. Comm. v. City of Santa Rosa, 142 F.3d 1136, 1139 (9th Cir. 1998). In this case, WaterKeepers contends that AG Industrial has violated the Permit by discharging contaminated storm and non-storm water; by failing to develop and implement adequate BMPs; by failing to develop and implement an adequate SWPPP; and by failing to develop and implement an adequate monitoring and reporting program.
 
 III.
 
 9
 The Clean Water Act requires citizen plaintiffs to notify alleged violators of their intent to sue at least sixty days before filing a complaint. 33 U.S.C. § 1365(b)(1)(A). In our circuit, compliance with this notice provision is required for jurisdiction. See Natural Res. Def. Council v. Southwest Marine, Inc., 236 F.3d 985, 995 (9th Cir.2000); cf. Hallstrom v. Tillamook County, 493 U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) (holding that notice is a mandatory prerequisite to suit under the Resource Conservation and Recovery Act but declining to decide whether the notice requirement "is jurisdictional in the strict sense of the term"). In order to comply, a citizen plaintiff must send an intent-to-sue letter that includes
 
 
 10
 sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, ... [and] the date or dates of such violation.
 
 
 11
 40 C.F.R. § 135.3(a).
 
 
 12
 "The key language in the notice regulation is the phrase `sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." Cmty.Ass'n for Restoration of the Env't v. Henry Bosma Dairy, 305 F.3d 943, 951 (9th Cir.2002) [hereinafter Bosma Dairy]. Notice is sufficient if it is reasonably specific and if it gives "the accused company the opportunity to correct the problem." San Francisco BayKeeper, 309 F.3d at 1158 (quoting Atl. States Legal Found., Inc. v. Stroh Die Casting Co., 116 F.3d 814, 820 (7th Cir.1997)). Although the Act's notice requirement is "strictly construed," Southwest Marine, 236 F.3d at 998, plaintiffs are not required to "list every specific aspect or detail of every alleged violation." Bosma Dairy, 305 F.3d at 951 (quoting Pub. Interest Research Group v. Hercules, Inc., 50 F.3d 1239, 1248 (3d Cir.1995)). We review the adequacy of pre-suit notice de novo. San Francisco BayKeeper, 309 F.3d at 1157.
 
 A.
 
 13
 WaterKeepers sent AG Industrial a ten-page notice letter that is significantly longer and more detailed than the notice letter we held sufficient in Southwest Marine. 236 F.3d at 1003-08. WaterKeepers' letter describes the problem of storm water pollution in the Mokelumne River, which is a tributary to the San Joaquin River and the Delta. It specifically identifies pollutants associated with AG Industrial's operations; describes in detail the sources and practices that lead to the discharge of contaminated storm water from AG Industrial's site; and explains that non-storm water, contaminated by washing or hosing down dirty machinery or equipment, is flushed from AG Industrial's site into the storm sewer system. The letter faults AG Industrial for failing to seek coverage under California's General Permit, and accuses AG Industrial of violating the Act by discharging contaminated storm water "during at least every rain event over 0.1 inches." Two tables attached to the letter list daily rain accumulation at area sites. The letter also charges AG Industrial with violating the Act "on each and every date on which the facility discharged contaminated wash water." The letter suggests solutions for AG Industrial's storm and non-storm water discharge problems, including grading, berming, roofing, structural controls to prevent the discharge of contaminated water, and a filtration system to treat contaminated water.
 
 
 14
 With respect to prevention and monitoring requirements, WaterKeepers' letter states that AG Industrial has violated the General Permit by failing to develop and implement BMPs; by failing to implement an SWPPP; and by failing to implement a monitoring and reporting program. The letter describes these Permit requirements in detail and directs the reader's attention to the specific Permit sections that explain what is required.
 
 B.
 
 15
 The district court ruled WaterKeepers' notice letter inadequate solely on the basis of WaterKeepers' allegation regarding storm-water discharges. The district court held that WaterKeepers did not provide enough specific information about the dates of alleged storm-water discharges. Having carefully reviewed WaterKeepers' notice letter, we conclude that the district court's ruling on this point cannot be squared with our recent decision in San Francisco BayKeeper.
 
 
 16
 San Francisco BayKeeper alleged in its notice letter that defendant Tosco Corp. illegally discharged petroleum coke "on each day when the wind [was] sufficiently strong to blow coke" from piles at Tosco's facility into a nearby waterway. San Francisco BayKeeper, 309 F.3d at 1159. We held this notice sufficient, even though San Francisco BayKeeper "did not provide any specific dates" for the alleged violations. Id. Here, WaterKeepers' notice letter states that AG Industrial discharges contaminated storm water during "every rain event over 0.1 inches." Because this allegation is as specific as San Francisco BayKeeper's, we hold that it is similarly sufficient.[2]
 
 
 17
 The district court found it significant that WaterKeepers' expert, Steven Bond, testified at deposition that storm water will not always be discharged from AG Industrial's facility after a 0.1 inch rainfall; Bond stated that a 0.19 inch standard would be more accurate. This testimony may be relevant to the merits of WaterKeepers' claims, but we do not agree with the district court that it is relevant to the adequacy of WaterKeepers' notice letter. Regardless of whether WaterKeepers is able to prove each claimed discharge, its intent-to-sue letter put AG Industrial on notice as to the violations that WaterKeepers would allege in its complaint. The statute and regulation require no more. See 33 U.S.C. § 1365(b)(1)(A) (explaining that notice must be given of "alleged" violations); 40 C.F.R. § 135.3(a) (same).
 
 
 18
 The district court found fault with the rainfall tables WaterKeepers attached to its notice letter. The court noted that the tables record rainfall at locations some distance from AG Industrial, that data is recorded as missing on many dates in one table, and that in some cases the two tables list different rainfall amounts for the same dates. Again, however, these facts are relevant to the merits, not to the adequacy of WaterKeepers' notice letter. WaterKeepers was not required to include any rain tables under San Francisco BayKeeper, and, even if it had been, the tables it did send provide notice of several exact dates of alleged discharge violations.[3]
 
 C.
 
 19
 AG Industrial offers four alternate grounds for affirming the district court's dismissal in whole or in part. First it argues that WaterKeepers' intent-to-sue letter provided insufficient notice of the storm water standards, limitations, or orders allegedly violated. See 40 C.F.R. § 135.3(a). California's General Permit prohibits storm water discharges that "cause or threaten to cause pollution, contamination, or nuisance," General Permit at 4 ¶ A.2; that "adversely impact human health or the environment," id. at 4 ¶ C.1; and that "contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Board's Basin Plan." Id. at 4, ¶ C.2. WaterKeepers contends that AG Industrial has violated these provisions by discharging contaminated storm water that fails to meet Environmental Protection Agency ("EPA") water quality standards for California. See 40 C.F.R. § 131.38 (setting out quality standards for California waters, commonly known as the "California Toxics Rule"). AG Industrial argues that because WaterKeepers did not cite specifically to the California Toxics Rule in its notice letter, it cannot rely on the Rule to support its claims.
 
 
 20
 We are not persuaded. WaterKeepers' notice letter lists various contaminants believed to be at AG Industrial's site, explains how they are exposed to rainfall, and points to the specific provisions of the General Permit allegedly violated.[4] WaterKeepers' notice letter was thus "sufficiently specific to inform [AG Industrial] about what it is doing wrong."[5] San Francisco BayKeeper, 309 F.3d at 1159 (quoting Southwest Marine, 236 F.3d at 996).
 
 
 21
 AG Industrial next challenges the sufficiency of WaterKeepers' notice regarding non-storm water discharges. WaterKeepers' intent-to-sue letter accuses AG Industrial of discharging contaminated non-storm water whenever it periodically washes down dirty areas of the facility or dirty machinery and equipment. "At these times," according to the letter, "contaminants present in the area are carried off by the wash water and flushed into the storm sewer system." WaterKeepers' letter alleges violations of the Act "on each and every date on which [AG Industrial's] facility has discharged contaminated wash water."
 
 
 22
 We follow San Francisco BayKeeper in holding that these allegations are sufficient to satisfy the Act's notice requirement. See San Francisco BayKeeper, 309 F.3d at 1158-59. In addition to the wind-related discharges discussed above, San Francisco BayKeeper notified defendant Tosco that it was responsible for illegal petroleum coke spills on each day of ship loading at Tosco's facility. Id. at 1158. We held this notice sufficient because San Francisco BayKeeper was only required to "provide sufficient information to permit the recipients to identify ... the date or dates" of alleged violations and because BayKeeper's allegations were specific enough for this purpose. Id. at 1158-59 (omission and emphasis in the original; internal quotation marks and citation omitted). As a practical matter, BayKeeper did not have access to Tosco's complete records, and Tosco was "obviously in a better position than BayKeeper" to identify the dates of its own ship loading. Id. at 1158. The same is true here. AG Industrial is in a much better position to know when it periodically washes down areas of its facility, and WaterKeepers' letter provided sufficient information to permit AG Industrial to identify the nature and dates of the alleged violations. The point of the Act's notice requirement is not to prove violations, it is to inform the polluter "about what it is doing wrong," and to allow it an "opportunity to correct the problem." Id. at 1159. (quoting Southwest Marine, 236 F.3d at 996, and Atl. States Legal Found., Inc., 116 F.3d at 819); see also Bosma Dairy, 305 F.3d at 953 (explaining that Congress did not intend, in enacting the notice requirement,"to unduly burden citizens by requiring them to basically carry out the job of the [environmental enforcement] agenc[ies]"). WaterKeepers' notice letter plainly satisfies these criteria.[6]
 
 
 23
 AG Industrial argues that the district court's dismissal may be affirmed with respect to WaterKeepers' prevention, monitoring and reporting claims because AG Industrial has now cured all alleged violations. See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 57-64, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (holding that citizen plaintiffs may not sue for "wholly past" violations of the Clean Water Act but must instead allege "continuous or intermittent" violations). AG Industrial contends that it has now filed a notice of intent to comply with the General Permit and that it prepared an SWPPP and a monitoring plan in July 2000, after receiving WaterKeepers' notice letter but before WaterKeepers filed its complaint. WaterKeepers responds that AG Industrial's new management practices and prevention, monitoring and reporting plans are inadequate, ineffective and fail to meet the requirements of the General Permit.
 
 
 24
 We considered a similar situation and rejected an argument nearly identical to AG Industrial's in Southwest Marine:
 
 
 25
 If a defendant receives a proper notice letter alleging that it has failed to prepare and implement an adequate plan and, in response, prepares a new plan and begins to implement it before the complaint is filed, is the otherwise proper notice letter defective for failing to identify and discuss the new plan and its implementation? In those circumstances, must a citizen-plaintiff send a new notice letter? We think not. Subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant.
 
 
 26
 236 F.3d at 997 (considering "what, if any, effect Defendant's post-notice alterations of its plans and facilities had on the adequacy of the [plaintiffs'] notice letter"). Following Southwest Marine, we hold that WaterKeepers was not required to send a second notice letter in order to pursue specific claims regarding the inadequacies of AG Industrial's post-notice compliance efforts. Id. ("Although we require strict compliance with the [Act]'s notice requirement, we do not require citizen-plaintiffs to refer to provisions of plans that do not exist.").
 
 
 27
 Finally, AG Industrial relies on the Supreme Court's decision in Gwaltney to argue that we may affirm dismissal because the evidence the parties submitted on summary judgment proves that WaterKeepers did not file its complaint in "good faith." See Gwaltney, 484 U.S. at 64, 108 S.Ct. 376 ("[W]e agree that § 505 [of the Act] confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation ....") (emphasis added). In essence, AG Industrial argues that we should look ahead to the parties' summary judgment evidence, hold that AG Industrial wins on the merits, further hold that AG Industrial's evidence is so strong that it proves WaterKeepers' complaint was not filed in good faith, and affirm dismissal because the Act only confers jurisdiction over good-faith allegations. We conclude that this argument rests on a misunderstanding of Gwaltney.
 
 
 28
 Gwaltney held that citizen plaintiffs may not sue to remedy "wholly past" violations of the Clean Water Act; the Act confers jurisdiction only over citizen suits that allege continuous or intermittent violations.[7] Id. at 56-63. Gwaltney did not hold, contrary to AG Industrial's suggestion, that citizen plaintiffs must prove a violation of the Act before jurisdiction attaches or that dismissal for lack of jurisdiction is the proper remedy for allegations that turn out not to have been made in good faith. Instead, the Supreme Court explained that an allegation is sufficient to confer jurisdiction and that Fed.R.Civ.P. 11 provides the proper remedy for bad-faith claims. See id. at 64, 108 S.Ct. 376 ("Petitioner argues that citizen-plaintiffs must prove their allegations of ongoing noncompliance before jurisdiction attaches under [the Act]. We cannot agree.") (citation omitted); id. at 65, 108 S.Ct. 376 ("The statute does not require that a defendant `be in violation' of the Act at the commencement of suit; rather, the statute requires that a defendant be `alleged to be in violation.'"); id. ("Our acknowledgment that Congress intended a good-faith allegation to suffice for jurisdictional purposes ... does not give litigants license to flood the courts with suits premised on baseless allegations. Rule 11 of the Federal Rules of Civil Procedure ... adequately protects defendants from frivolous allegations.") (emphasis added). Adopting AG Industrial's proposed approach at this stage would ignore these teachings. Accordingly, we hold that Gwaltney does not require us to reach the merits of the parties' summary judgment motions in order to decide whether the district court has jurisdiction.
 
 D.
 
 29
 Because it is clear under Supreme Court and Ninth Circuit precedent that the district court has jurisdiction over nearly all of WaterKeepers' claims, we cannot say that AG Industrial is a prevailing party entitled to attorney's fees under the Act. See Razore, 66 F.3d at 240 (explaining that a defendant is entitled to attorney's fees only if the plaintiff's claims were "frivolous, unreasonable, or without foundation").
 
 IV.
 
 30
 The district court must ultimately decide whether WaterKeepers' evidence of continuous and ongoing violations is sufficient to survive summary judgment. On this appeal we hold only that the district court has jurisdiction to reach the merits of all but WaterKeepers' industrial process water claim. Accordingly, we reverse the district court's dismissal in part, affirm as to WaterKeepers' process water claim, affirm the district court's denial of attorney's fees, and remand so that the district court may reach the merits. We decline WaterKeepers' invitation to sanction AG Industrial under either Fed. R.App. P. 38 or 28 U.S.C. § 1927.
 
 
 31
 Appellants are entitled to their costs.
 
 
 32
 REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 BMPs are "schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the pollution of waters of the United States." 40 C.F.R. § 122.2 (internal quotation marks omitted). "BMPs also include treatment requirements, operating procedures, and practices to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage."Id. According to the General Permit, BMPs may be "structural" (e.g., roofing, berms, treatment facilities) or "non-structural" (e.g., good housekeeping, preventive maintenance, training). See Natural Res. Def. Council v. Southwest Marine, Inc., 236 F.3d 985, 991 n. 1 (9th Cir.2000).
 
 
 [2]
 The district court believedSan Francisco BayKeeper to be distinguishable because the piles of petroleum coke were "so readily identifiable" as the pollution source in that case and because "the nature of potential remedial actions to be taken at the [AG Industrial] facility is by no means as clear." We do not agree that San Francisco BayKeeper can be distinguished in this way.
 Although no single source may be blamed for all of AG Industrial's allegedly contaminated discharges, the company's pollution problem is as easy to understand as Tosco's: AG Industrial's site is allegedly littered with contaminants, and those contaminants are carried off the site when it rains. WaterKeepers' notice letter clearly identifies the sources of AG Industrial's problem-debris, manufacturing materials and activities exposed to rainfall, and oil, grease and chemical stains throughout the facility. The letter also describes remedial steps AG Industrial could take.
 As was the case in San Francisco BayKeeper, WaterKeepers provided notice "sufficiently specific to inform [AG Industrial] about what it is doing wrong." 309 F.3d at 1159 (citation omitted).
 
 
 [3]
 We note that WaterKeepers submitted more complete rainfall data in support of its summary judgment motion, and that its supplemental data shows heavy rainfall on many of the same dates identified in WaterKeepers' original tables. WaterKeepers may pursue claims for the new dates included in its revised tables because the discharges alleged are all "from the same source" and "of the same nature."Bosma Dairy, 305 F.3d at 953.
 
 
 [4]
 The General Permit is an "order" of the State Water Resources Control BoardSee 40 C.F.R. § 135.3(a) (requiring notice that includes information sufficiently specific to allow the recipient to identify the "standard, limitation, or order" allegedly violated) (emphasis added).
 
 
 [5]
 For similar reasons, we reject AG Industrial's challenge to WaterKeepers' reliance on EPA benchmark valuesSee Proposed Reissuance of NPDES Storm Water Multi-Sector General Permit for Industrial Activities, 65 Fed.Reg. 171010, 17031 (proposed March 30, 2000) (setting out EPA benchmark values for certain contaminants). WaterKeepers points to the EPA benchmark values as evidence to support its claim that AG Industrial has failed to implement adequate BMPs. WaterKeepers satisfied the Act's notice requirement for this claim by specifically referring to the General Permit's BMP provisions in its notice letter.
 
 
 [6]
 We note one exception to our general holding regarding non-storm water discharges. WaterKeepers' complaint and summary judgment motion refer to manufacturing "process water" or "wastewater" that is discharged from AG Industrial's facility. Because WaterKeepers' notice letter does not refer to manufacturing process water or wastewater, we affirm dismissal with respect to this claim. We doubt that this holding will have a significant effect on proceedings below, however, because at oral argument plaintiffs' counsel indicated that WaterKeepers intends to proceed only with those non-storm water claims specifically referred to in the notice letter — that is, non-storm water claims based on facility and equipment washing
 
 
 [7]
 WaterKeepers' suit plainly passes this test — WaterKeepers' complaint alleges continuing and recurring violations of the Act