**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

COASTAL ENVIRONMENTAL
RIGHTS FOUNDATION, a non-profit
corporation,

        *Plaintiff-Appellant*,

  v.

NAPLES RESTAURANT GROUP,
LLC, a California Limited Liability
Company; JOHN MORRIS, an
individual,

        *Defendants-Appellees*.

No.23-55469

D.C. No.
2:21-cv-09172-
MCS-JEM

OPINION

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted May 6, 2024
Pasadena, California

Filed September 18, 2024

Before:  Danielle J. Forrest and Patrick J. Bumatay, Circuit
Judges, and James Donato,[*] District Judge.

Opinion by Judge Bumatay;
Dissent by Judge Donato

## SUMMARY[**]

### Environmental Law / Mootness

The panel vacated the district court's judgment after a
bench trial in favor of the defendants in a citizen suit under
the Clean Water Act and remanded with instructions to the
district court to dismiss the case as moot.

Coastal Environmental Rights Foundation, an
environmental group, sued Naples Restaurant Group, LLC,
and its owner over the restaurant's annual Fourth of July
fireworks show at Alamitos Bay in Los Angeles. The district
court held that one "low break," when a firework exploded
prematurely and fell into the water, was insufficient to
establish that Naples was in continuing violation of the Act.

The panel held that the case was constitutionally moot
because, after the district court's verdict, the Los Angeles
Regional Water Quality Control Board began issuing a
general National Pollutant Discharge Elimination System

---

[*] The Honorable James Donato, United States District Judge for the
Northern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

permit authorizing public fireworks displays over Los Angeles waters, and Naples applied for and received an NPDES permit for its event. The panel concluded that it was absolutely clear that the alleged Clean Water Act violations could not reasonably be expected to recur because the environmental group alleged that Naples violated the Act by discharging pollutants without a permit, but Naples now had a permit authorizing that very discharge. Accordingly, the environmental group's claim for declarative and injunctive relief was moot. Agreeing with the Eighth Circuit, and disagreeing with other circuits, the panel held that, following *Laidlaw Env't Servs., (TOC) Inc.*, 528 U.S. 167 (2000), the same mootness standard applied to the group's claim for civil penalties. The panel also held that the group's claim for attorneys' fees also was moot.

Dissenting, District Judge Donato wrote that he agreed that there is just one standard for determining the mootness of a citizen suit under the Clean Water Act for both injunctive relief and civil penalties claims, but he disagreed with the majority's conclusion that Naples met its heavy burden of demonstrating that it was absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. He would decline to find Coastal Environmental Rights Foundation's claims for injunctive relief and civil penalties moot.

**COUNSEL**

Livia B. Beaudin (argued), Amy C. Johnsgard, and Marco A. Gonzalez, Coast Law Group, Encinitas, California, for Plaintiff-Appellant.

Anusha Pillay (argued), Collier Walsh Nakazawa LLP, Seattle, Washington; Joseph A. Walsh II and Caroline J. Wilson, Collier Walsh Nakazawa LLP, Long Beach, California; for Defendants-Appellees.

**OPINION**

BUMATAY, Circuit Judge:

This case started with a bang several years ago, when an environmental group sued a restaurant and its owner over its annual Fourth of July fireworks show. As any attendee of a fireworks show knows, fireworks all have one thing in common—they explode. They burst into different shapes and sparkling colors. But sometimes fireworks malfunction—some, hopefully only a few, fizzle on ignition. Others result in what's called a "low break"—exploding prematurely lower in the air.

Here, the environmental group, Coastal Environmental Rights Foundation ("CERF"), ignited this litigation by alleging that Naples Restaurant Group, LLC and its owner John Morris (collectively "Naples"), violated the Clean Water Act ("the Act") by setting off fireworks that fell into Alamitos Bay in Los Angeles without a permit. Indeed, following a bench trial, the district court found that one time a Naples firework ended in a low break—falling into the

water below.  But the district court held that wasn't enough to establish Naples was in continuing violation of the Act. CERF then appealed.  Ordinarily, we would review the merits of the district court's decision.

But other developments changed this case's trajectory. After the district court's verdict, the Los Angeles Regional Water Quality Control Board began issuing a general permit—known as a National Pollutant Discharge Elimination System ("NPDES") permit—authorizing public fireworks displays over Los Angeles waters.  Naples applied for and received an NPDES permit for its event.  While we may have anticipated an appeal filled with pyrotechnic testimony, launch angles, and video replays, we are now left with a simple question:  Does the general NPDES permit moot this case?

To decide that issue, we assess whether the alleged Clean Water Act violations could "reasonably be expected to recur."  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (simplified).  When it's "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur," a citizen suit under the Clean Water Act becomes moot.  *Id.* (simplified).  That's the situation here.  CERF alleged Naples violated the Act by discharging pollutants *without a permit*, but Naples now has a permit authorizing that very discharge.  So this case is moot, having fizzled like a malfunctioning firework.

# I.

On the third of July each year, Naples hosts its "Big Bang on the Bay" event at its restaurant, Boathouse on the Bay. Naples has held the event every year since 2011, except during 2020 because of COVID-19.  As one might expect, the fireworks show is the main feature of the event.  Naples

launches hundreds of fireworks off a barge in Alamitos Bay with the help of a licensed pyrotechnic operator.

CERF, a non-profit environmental organization, filed a citizen suit under the Clean Water Act against Naples in 2021.  CERF alleged that Naples violated the Clean Water Act because, without a permit, the fireworks Naples launched during its annual Independence Day show fell into and polluted the Alamitos Bay.  CERF sought declaratory and injunctive relief, civil penalties, and attorneys' fees.

Following a two-day bench trial, in April 2023, the district court rendered a verdict for Naples.  The district court found that CERF established that one of Naples's fireworks from the 2022 show resulted in a "low break"—a firework malfunction that caused its stars and embers to fall into the Bay—which constituted the discharge of a pollutant into the water.  But the district court also found that CERF proved no other fireworks resulted in a similar discharge.  As a result, there was insufficient evidence to conclude that Naples's violations were likely to continue.  Thus, the district court held that CERF failed to prove "continuous and ongoing violations" of the Clean Water Act and dismissed CERF's claim without prejudice.  CERF appealed.

Things changed a month after the district court's ruling.  In May 2023, the Los Angeles Regional Water Quality Control Board began offering NPDES permits authorizing "discharges from public firework displays . . . into waters of the United States in the Los Angeles Region." *See* 33 U.S.C. § 1342(b).  The NPDES permit is available to "[a]ny person who proposes to discharge pollutants from the public display of fireworks to surface waters."  Applicants like Naples, who "pose no significant threat to water quality," must follow the permit's restrictions and pay an annual fee according to a fee

schedule, *see* Cal. Code Regs. tit. 23, § 2200(a)(10).  Naples applied for an NPDES permit.  In June 2023, the Board granted Naples a permit.

We have jurisdiction under 28 U.S.C. § 1291, and we now consider CERF's appeal.

## II.

"The fundamentals of standing are well-known and firmly rooted in American constitutional law." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).  Most basic among those principles is that a case or controversy must include an injury-in-fact, caused by the defendant's acts, that likely would be redressed by the requested judicial relief.  *Id.* Further, these conditions "must remain extant at all stages of review, not merely at the time the complaint is filed." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) (simplified).  Take redressability.  "[W]hen it is impossible for a court to grant any effectual relief whatever to the prevailing party[,]" there is nothing left for the court to do and the "case becomes moot."  *Id.* at 609 (simplified).  And Article III tasks us with an ongoing duty to assess mootness, regardless of the parties' views on the question.  *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Although neither party has urged that this case is moot, resolution of the question is essential if federal courts are to function within their constitutional sphere of authority.").  Finally, we always review mootness de novo.  *Smith v. Univ. of Wash., L. Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000).

## A.

The Clean Water Act provides a comprehensive scheme "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Gwaltney*, 484 U.S. at 52 (quoting 33 U.S.C. § 1251(a)). To meet this goal, the Act prohibits "the discharge of any pollutant" into navigable waters unless expressly authorized. 33 U.S.C. § 1311(a). The EPA or a State (with EPA approval) may authorize the discharge of pollutants into navigable waters through an NPDES permit. *See id.* § 1342(a)–(b).

The Act includes a citizen suit provision that authorizes a citizen to commence a civil action "against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation." 33 U.S.C. § 1365(a). The citizen plaintiff must have "an interest which is or may be adversely affected" by the defendant. *Id*. § 1365(g). "To impel future compliance with the Act," *Friends of the Earth, Inc. v. Laidlaw Env't Servs., (TOC) Inc.*, 528 U.S. 167, 173 (2000), when a citizen prevails, "the [district] court may order injunctive relief and/or impose civil penalties payable to the United States Treasury," *Gwaltney*, 484 U.S. at 53 (citing 33 U.S.C. § 1365(a)). *See also Laidlaw*, 528 U.S. at 173. It also permits attorneys' fees for the prevailing party. 33 U.S.C. § 1365(d).

In *Gwaltney* and *Laidlaw*, the Supreme Court set guideposts for when citizen suits brought under the Clean Water Act become moot.

Start with *Gwaltney*. That case first looked at jurisdiction over a citizen suit. Because § 1365(a)'s text requires that a defendant "be in violation" of the Act, the Court held that the citizen suit provision only authorizes suits to abate *ongoing* or *future* violations—it "does not

permit citizen suits for wholly past violations." *Gwaltney,* 484 U.S. at 64. Thus, to authorize a citizen suit, the plaintiff must allege that the defendant is in "a state of either continuous or intermittent violation" so that "a reasonable likelihood [exists] that [the defendant] will continue to pollute in the future." *Id.* at 57. Because of the requirement of an ongoing violation, *Gwaltney* recognized that mootness could upend the citizen suit while the litigation remains pending. The allegations of ongoing violations, for example, may cease to be true "because the defendant begins to comply with the Act." *Id.* at 66. In that circumstance, "[l]ongstanding principles of mootness . . . prevent the maintenance of suit when there is no reasonable expectation that the wrong will be repeated." *Id.* (simplified). Given that it's the defendant's voluntary actions which trigger mootness, the defendant's burden to prove mootness "is a heavy one." *Id.* (simplified). To dismiss a case as moot, "[t]he defendant must demonstrate that it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (simplified); *see also id.* at 69 (Scalia, J., concurring) ("When a company has violated an effluent standard or limitation, it remains, for purposes of § [1365(a)] 'in violation' of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation."). This heavy burden "protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while . . . also protect[ing] plaintiffs from defendants who seek to evade sanction by predictable protestations of repentance and reform." *Id.* at 66–67 (simplified). Simply put, once an ongoing violation's abatement is "absolutely clear," then the citizen suit becomes moot.

Next came *Laidlaw*.  There, the Court first reiterated that civil penalties "afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of *ongoing unlawful conduct*."  *Laidlaw*, 528 U.S. at 186 (emphasis added).  But citizen plaintiffs may not seek civil penalties to remedy past violations.  *Id.* at 187–88 (recognizing that citizen plaintiffs "may not sue to assess penalties for wholly past violations"); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–07 (1998).  The Court explained that civil penalties serve two purposes: (1) they "promote immediate compliance by limiting the defendant's economic incentive to delay its attainment of permit limits," and (2) "they also deter future violations." *Laidlaw*, 528 U.S. at 185.  Even then, the Court warned that "there may be a point at which the deterrent effect of a claim for civil penalties becomes so insubstantial or so remote that it cannot support citizen standing."  *Id*. at 186.

Turning to mootness, *Laidlaw* reaffirmed that courts must apply a "stringent" standard when deciding whether a defendant's voluntary conduct has mooted a case.  *Id*. at 189. In *Laidlaw*, the Fourth Circuit determined a claim for civil penalties was moot "once the defendant fully complied with the terms of its [NPDES] permit and the plaintiff failed to appeal the denial of equitable relief."  *Id*. at 173.  But, in the Court's view, the Fourth Circuit failed to hold the defendant to the "heavy burden" of showing that its "challenged conduct cannot reasonably be expected to start up again."  *Id.* at 189 (simplified).   Instead, the Fourth Circuit simply deemed the suit for civil penalties moot because "citizen plaintiffs lack standing to seek civil penalties for wholly past violations."   *Id*.   The Court explained that the Fourth Circuit's mootness analysis was insufficient.  *Id*. at 190. Because mootness is distinct from standing, it is not a matter

of simply checking to see if the defendant's violation was abated.  *Id*.  Rather, mootness also requires asking whether the possibility of the defendant resuming the harmful conduct was "not too speculative to overcome mootness" or whether resumption of wrongful conduct was capable of repetition but evading review.  *Id*.  Thus, the Court held that the case would only become moot when later "events made it absolutely clear that [the defendant's] permit violations could not reasonably be expected to recur."  *Id*. at 193.  Because factual disputes existed on that question, the Court remanded for the lower courts to consider those facts.  *Id.* at 193–94.

A few principles emerge from *Gwaltney* and *Laidlaw*.  First, the touchstone for civil penalties under the Clean Water Act is deterrence.  Civil penalties deter current or future violations—they do not remedy wholly past violations.  Second, to establish mootness, the defendant bears a heavy burden to show that it's absolutely clear that past violations could not reasonably be expected to recur.  We administer this test stringently.  And finally, when there's no reasonable possibility of a future violation, civil penalties lose their deterrent effect and become moot.

### B.

Applying those principles, we turn to whether Naples's NPDES permit mooted CERF's claims for relief.  Recall that CERF requested three types of relief in its complaint: (1) declarative and injunctive relief, (2) civil penalties, and (3) attorneys' fees.  We address each separately.  *See Powell v. McCormack*, 395 U.S. 486, 496 n.8 (1969) ("Where several forms of relief are requested and one of the[] requests subsequently becomes moot, the Court has [to] still consider[] the remaining requests.").

**1.**

First, CERF requested declaratory and injunctive relief. CERF asked the district court to declare Naples "to have violated and to be in violation of the Clean Water Act," to enjoin Naples "from discharging pollutants unless and until [it] obtain[s] an NPDES permit," and "to take appropriate actions to restore the quality of [Alamitos Bay] impaired by their unlawful discharge of pollutants."  "A request for injunctive relief remains live" only when a "present harm" is left to enjoin and "[p]ast exposure to illegal conduct" is insufficient. *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (simplified).  And a request for declarative relief is no longer live when the declaration sought "is not only worthless to [the plaintiffs], [but] is seemingly worthless to all the world." *Steel Co.*, 523 U.S. at 106.

CERF's requests for declaratory and injunctive relief turn on a single "alleged wrong"—Naples was violating the Clean Water Act by discharging pollutants into Alamitos Bay *without an NPDES permit*. *See Ackley v. W. Conf. of Teamsters*, 958 F.2d 1463, 1468 (9th Cir. 1992) (assessing mootness based on the "alleged wrong").  Under *Laidlaw*'s "stringent" review for mootness, these claims for relief are moot.  Naples has carried its "heavy burden" to show that— with its newly obtained permit that expressly "authorize[s] discharges from public firework displays"—it can no longer violate the Act by discharging pollutants during fireworks shows *without a permit*.  Naples is now free to continue its Fourth of July tradition if it follows the conditions of its NPDES permit.  And any request for injunctive or declaratory relief would not afford CERF any relief from current or future violations of the Clean Water Act.  Nor can CERF seek injunctive relief for wholly past violations. *See*

*Gwaltney*, 484 U.S. at 59 ("[T]he harm sought to be addressed by the citizen suit lies in the present or the future, not in the past.").

Further, there's no ground to believe that Naples's alleged Clean Water Act violations are reasonably likely to reoccur. Naples obtained the NPDES permit precisely to comply with its Clean Water Act obligations. And the record does not indicate that Naples acquired its permit to moot the case. Rather the Los Angeles Regional Water Quality Control Board did not issue its general NPDES permit for fireworks displays until after the trial here, and Naples applied for a permit to cover its annual firework show promptly after it became available.[1] Contrary to the dissent's view, it would be "too speculative" to think that Naples would somehow lose its NPDES permit or let it lapse. *See Laidlaw*, 528 U.S. at 190. Nothing in the record suggests that Naples will stop paying for the annual fee for permit. And even if that were to happen, the loss of the permit is not likely to evade review. *See id.* (noting the exception to mootness for actions capable of repetition yet evading review). Besides, this isn't a case of an NPDES-permit holder violating its restrictions, which may raise the question of the permit holder's future compliance. Even if Naples were to breach its NPDES permit requirements in the future, that violation would be an entirely separate claim and would not fall under the single violation CERF alleged in its

---

[1] We disagree with the dissent on the relevance of the availability of an individual NPDES permit. As CERF concedes in its complaint, Naples was fully compliant with all inquiries from the Los Angeles Regional Water Quality Control Board. And once the Board began issuing general permits, Naples applied for and paid for the permit. Thus, the lack of an individual permit doesn't show that Naples will resume its purported violations of the Clean Water Act.

complaint.  *See* 33 U.S.C. §§ 1319(a)(1), 1342(b)(7) (providing an action against those who violate the conditions of an NPDES permit).

By obtaining an NPDES permit, Naples has shown that the only Clean Water Act violation that CERF asserts is not reasonably expected to reoccur.  This moots CERF's request for injunctive and declaratory relief.[2]

**2.**

Next, CERF sought civil penalties for Naples's alleged Clean Water Act violations.  The Act provides for civil penalties "not to exceed $25,000 per day for each violation" that are payable to the U.S. Treasury.  *See* 33 U.S.C. §§ 1365(d), 1319(d); *see also Gwaltney*, 484 U.S. at 53. CERF argues that its claim for civil penalties would provide CERF with effective relief, which keeps this suit alive, even if it's absolutely clear that Naples will not discharge fireworks without a permit again.  While this is a harder question, we ultimately disagree.

We have not definitively addressed whether a citizen suit request for civil penalties under the Clean Water Act becomes moot when a defendant obtains an NPDES permit that moots injunctive relief.  This question turns on whether

---

[2] Although the district court determined that only one of Naples's fireworks resulted in a discharge into the Bay, the dissent claims that Naples "flouted" the Clean Water Act for a decade by failing to obtain a permit.  In their briefing, the parties hotly contested whether fireworks shows are covered by the Clean Water Act.  We do not wrestle with that issue because the general NPDES permit clarifies that "[r]esidual firework pollutants discharged into surface waters constitutes discharge of a pollutant. Therefore, coverage under an NPDES permit is required before residual firework pollutant discharges associated with the public display of fireworks can be lawfully discharged."

we should treat requests for civil penalties any differently than requests for injunctive relief when deciding mootness. The question has divided other circuit courts.

On one side, the Second, Third, Fourth, Seventh, and Eleventh Circuits all view civil penalties as distinct from injunctive relief for mootness purposes and agree that, even when injunctive relief becomes inappropriate, *any* request for civil penalties defeats mootness.  *See, e.g.*, *Atl. States Legal Found., Inc. v. Pan Am. Tanning Corp.*, 993 F.2d 1017, 1021 (2d Cir. 1993) ("We hold . . . that a defendant's ability to show, after suit is filed but before judgment is entered, that it has come into compliance with limits on the discharge of pollutants will not render a citizen suit for civil penalties moot."); *Natural Res. Def. Council, Inc. v. Texaco Ref. and Mktg., Inc.*, 2 F.3d 493, 503 (3rd Cir. 1993) ("[We] hold that claims for damages are not moot because an intervening NPDES permit eliminates any reasonable possibility that [the defendant] will continue to violate specified parameters."); *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696 (4th Cir. 1989) ("[T]he penalty factor keeps the controversy alive . . . even though defendant has come into compliance and . . . civil penalties [are] assessed for past acts of pollution."); *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997) ("If the violation is cured at some point while the suit is pending . . . the case nevertheless does not become moot" because even if "the citizen plaintiffs would lose their right to an injunction," civil penalties "would be recoverable."); *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir. 1990) ("[T]he mooting of injunctive relief will not moot the request for civil penalties as long as such penalties were rightfully sought at the time the suit was filed.").  None of these cases,

however, involved the type of Clean Water Act violation alleged here—discharging pollutants without having a permit.  Rather, they all involved allegations that the defendant violated an existing NPDES permit, but later came into compliance.

Decided before *Laidlaw*, these cases generally relied on the Act's text mandating that a person who violates the Act "shall be subject to a civil penalty," 33 U.S.C. § 1319(d). *See, e.g.*, *Texaco Refining and Marketing*, 2 F.3d at 503 ("This mandatory language demonstrates that once a citizen plaintiff establishes an ongoing violation of a parameter at the time the complaint is filed, the court is obliged to assess penalties for all proven violations of that parameter.").  But some anchored their reasoning on incentivizing citizen plaintiffs to act and discouraging dilatory tactics by defendants. *See, e.g.*, *Pan. Am. Tanning Corp.*, 993 F.2d at 1021 ("[M]ooting an entire suit based on post-complaint compliance would weaken the deterrent effect of the Act by diminishing the incentives for citizen plaintiffs to sue and by encouraging defendants to use dilatory tactics in litigation.").

Only the Eighth Circuit has addressed facts like ours and it split with the other circuits. *See Miss. River Revival, Inc. v. City of Minneapolis*, 319 F.3d 1013 (8th Cir. 2003). There, as here, citizen plaintiffs accused the defendants of discharging a pollutant without an NPDES permit. *Id.* at 1015.  The defendants later obtained the permits. *Id.*  Faced with these facts, the Eighth Circuit held that "citizen suit plaintiffs lack Article III standing to recover civil penalties for past violations because the payment of money to the United States Treasury does not redress any injury to them caused by the violations." *Id.* at 1016.

The Eighth Circuit acknowledged its disagreement with other circuits but noted the superseding effect of *Laidlaw*: "*Laidlaw* has overruled these decisions, at least in part, by equating citizen suit claims for civil penalties and claims for injunctive relief for mootness purposes." *Id.* at 1016 n.3.[3] The Eighth Circuit understood *Laidlaw* to set out the same mootness inquiry for civil penalties and for injunctive relief, and it determined that claims for civil penalties are moot when "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Laidlaw*, 528 U.S. at 189). Thus, the Eighth Circuit held that the citizen suit for civil penalties was moot because issuance of the NPDES permit meant that "the only violations alleged by plaintiffs cannot reasonably be expected to recur." *Id.* at 1017.

While we acknowledge that the weight of circuit courts stands against the Eighth Circuit's view, the persuasive strength of those opinions changed after *Laidlaw*. We agree with the Eighth Circuit that *Laidlaw* established a mootness standard for Clean Water Act citizen suits that applies both to claims for civil penalties *and* for injunctive relief.

Our understanding of *Laidlaw*'s mootness standard comes from its discussion of the purpose of civil penalties. The Court explained that civil penalties "encourage

---

[3] After *Laidlaw*, the Second Circuit declined to find a Clean Water Act citizen suit moot after the defendant obtained an NPDES permit based on the incompleteness of the factual record. *See Bldg. and Const. Trades Council of Buffalo v. Downtown Dev.*, 448 F.3d 138, 152 (2d Cir. 2006) ("We cannot say, based on the current record, . . . that it is 'absolutely clear' that the cause of action asserted as to alleged violations is moot, because it is unclear whether the permit allegedly obtained . . . covers . . . all those areas where the alleged violations had been occurring."). We have none of these factual disputes here.

defendants to discontinue current violations and deter them from committing future ones." *Laidlaw*, 528 U.S. at 186. So even if a defendant comes into compliance with the Act after the start of litigation—thereby mooting injunctive relief—civil penalties still may deter "the prospect of future violations." *Id.* at 193. Indeed, sometimes a defendant's post-litigation actions may not "make[] future . . . violations any less likely, deterrence any less necessary, or the deterrent effect of civil penalties any less potent." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000). So coming into compliance with the Clean Water Act doesn't necessarily extinguish the need for civil penalties. But when post-litigation events "ma[k]e it absolutely clear that the [Act's] violations could not reasonably be expected to recur," then claims for civil penalties lose their deterrent effect and become moot. *Laidlaw*, 528 U.S. at 193. Put simply, *Laidlaw*'s mootness rule is clear: even when a defendant's compliance moots injunctive relief, civil penalties remain available to deter future violations, unless it's absolutely clear that the alleged violation could not reasonably be expected to recur.[4]

---

[4] This reading reflects Justice Scalia's understanding of the *Laidlaw* majority. *See Laidlaw*, 528 U.S. at 211 n.5 (Scalia, J., dissenting) ("[T]he opinion for the Court appears to recognize that a claim for civil penalties is moot when it is clear that no future injury to the plaintiff at the hands of the defendant can occur."). On the other hand, Justice Stevens disagreed. *See id.* at 196 (Stevens, J., concurring) ("[P]etitioners' claim for civil penalties would not be moot even if it were absolutely clear that respondent's violations could not reasonably be expected to recur because respondent achieved substantial compliance with its permit requirements after petitioners filed their complaint but before the District Court entered judgment."). Justice Stevens's reading seemingly conflicts with the majority's statement that the defendant's

And *Laidlaw*'s mootness standard makes constitutional sense. Article III requires parties to maintain a "continuing interest" in the litigation. *See Laidlaw*, 528 U.S. at 192. The Clean Water Act also requires citizen plaintiffs "hav[e] an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). Restricting civil penalties to only cases where they may deter future violations ensures both compliance with Article III and the Act. *See Gwaltney*, 484 U.S. at 70 (Scalia, J., concurring) ("The constitutional requirement for . . . injury is reflected in the statute itself, which defines 'citizen' as one who has 'an interest which is or may be adversely affected.'" (quoting 33 U.S.C. § 1365(g))). Otherwise, when no threat of future violations exists, the citizen plaintiff is not reasonably expected to suffer a future injury and so retains no constitutionally recognized interest in civil penalties, particularly because civil penalties go to the U.S. Treasury. In other words, when Clean Water Act violations aren't reasonably expected to recur, civil penalties lose their deterrent effect and they no longer remediate a citizen plaintiff's injury, which means the citizen plaintiff no longer has a cognizable interest under Article III.

CERF asserts that *Decker* contradicts this reading of *Laidlaw*. We disagree. In *Decker*, the Supreme Court

---

"facility closure, like [its] earlier achievement of substantial compliance with its permit requirements, might moot the case" and its direction for the lower courts to determine, as a factual matter, the effect of the defendant's compliance actions "on the prospect of future violations." *Id.* at 193–94. The majority's discussion there would be irrelevant if, as Justice Stevens suggested, the request for civil penalties could *never* be mooted. In any case, Justice Stevens's statement was limited to defendants who violate the terms of an existing NPDES permit—not defendants who discharge without a permit but later obtain a permit, as here.

confronted whether a citizen suit was mooted after the EPA amended stormwater regulations shortly before oral argument in the case. *See* 568 U.S. at 604. Under the old regulation, the Ninth Circuit held that the defendant needed to obtain an NPDES permit to discharge. *Id*. at 607. After the rule change, the parties contested whether a permit was still required. *Id*. at 605. The citizen plaintiff argued the defendant violated the Act under *both* the earlier and amended regulation. *Id*. at 610. But, importantly, the rule change did not rule out any form of relief—civil penalties, injunctive relief, and attorneys' fees were still on the table. *Id*. Thus, the Court said that "a live controversy continues to exist regarding whether [the defendant] may be held liable for unlawful discharges under the earlier version of the [stormwater regulation]." *Id*. at 609–10. So *Decker* stands for the unremarkable proposition that a "case becomes moot only when it is *impossible* for a court to grant any effectual relief." *Id*. at 609 (simplified) (emphasis added). Unlike here, it was never clear in *Decker* that the defendant was ever in compliance with the Clean Water Act. But Naples has definitively remedied the alleged violation of discharging a pollutant without a permit. That key factual difference allowed for both civil penalties and "injunctive relief for both past and ongoing violations" in *Decker*, but it moots that same relief here. *Id*. at 610.

We also reject CERF's assertion that a trio of Ninth Circuit cases—*Ecological Rts. Found.*, 230 F.3d at 1141; *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002); and *United States v. Able Time, Inc.*, 545 F.3d 824 (9th Cir. 2008)—keep this case alive. None of those cases disturb our conclusion that the civil penalties here are moot because they no longer have a deterrent effect.

In *Ecological Rights*, the defendant's violations of an earlier permit raised the prospect of continuing violations under a later permit.  230 F.3d at 1153.  Indeed, the defendant likely continued to violate *both* permits given that the new permit was "stricter."  *Id.*  So the later permit did not moot the case, because civil penalties discouraged future violation and offered redress to the citizen plaintiff.

In *San Francisco BayKeeper*, we considered "whether [a] plaintiff can maintain a suit against a defendant firm that no longer operates the polluting facility at issue." 309 F.3d at 1155.  We concluded that civil penalties would still serve an "important deterrent function" for future owners because the "polluting facility . . . continue[d] to operate."  *Id.* at 1155, 1160.

And in *Able Time*—which was not a citizen suit and which involved civil penalties under a different statute, 19 U.S.C. § 1526(f)—we simply determined that the action was "not moot because the civil penalty remedy [was] still available."  545 F.3d at 828.  That case is thus unrelated to whether a Clean Water Act citizen suit becomes moot once civil penalties lose their deterrent value.

In sum, following *Laidlaw* a claim for civil penalties is moot when the defendant shows that it's absolutely clear that the alleged violation could not reasonably be expected to recur.  And here, when CERF's only claim is that Naples violated the Clean Water Act by discharging fireworks without an NPDES permit, Naples's acquisition of a permit makes it clear that this violation is not reasonably expected to recur.  This moots CERF's claim for civil penalties.

**3.**

Lastly, CERF argues its request for attorneys' fees supports its continued interest in this action. Generally, "[a]n interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Steel Co.*, 523 U.S. at 108 (simplified). Admittedly, we've not always followed that rule when attorneys' fees could compel compliance with the Clean Water Act. In *Northwest Environmental Advocates v. City of Portland*, we held that "[b]ecause [the citizen plaintiff] claims entitlement to attorney's fees based on the alleged violations of the old permit, and seeks to enforce the water quality standards independently of the effluent limitations, a live and genuine controversy remains, so the case is not moot." 56 F.3d 979, 990 (9th Cir. 1995). But again, that case involved a different type of claim than the one here: the City of Portland allegedly violated the conditions of its existing NPDES permit, so the issuance of a new permit didn't remedy that alleged wrong. *Id.* at 982, 990. As that is not the case here, we see no reason to depart from the rule that attorneys' fees cannot resuscitate an otherwise-moot case.

**III.**

Because the Clean Water Act violation that CERF contends Naples committed can't reasonably be expected to recur, this case is moot. We vacate and remand with instructions to the district court to dismiss this case as moot. Each party shall bear its own costs on appeal.

**VACATED AND REMANDED.**[5]

DONATO, District Judge, dissenting:

I agree that there is just one standard for determining the mootness of a citizen's lawsuit under the Clean Water Act, Pub. L. No. 92-500, 86 Stat. 816 (1972), for both injunctive relief and civil penalties claims: Did the defendant meet its "heavy" burden of demonstrating that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur?" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (emphasis in original) (quotations and citation omitted). In the haste to declare "case closed," the majority concludes that Naples has met that heavy burden without providing *any* evidence to make it absolutely clear that Naples' wrongful behavior could not reasonably be expected to recur. Naples itself declined to call for this outcome at the outset of this appeal and told us that it "will not argue that this appeal is moot." The danger of the majority's holding is that it will dilute the protections of the Clean Water Act by allowing a defendant to escape liability on grounds of mootness without

---

[5] CERF's motion for judicial notice (Dkt. 13) is GRANTED. We disagree with the dissent that the district court need find additional facts here. CERF, not Naples, submitted the motion for judicial notice and attested to the accuracy of the facts within the motion. *See* Fed. R. Evid. 201(b). We are not free to ignore such facts here. Fed. R. Evid. 201(c)(2) (A court "must take judicial notice if a party requests it and the court is supplied with the necessary information."). Judge Donato concurs in the grant of CERF's motion for judicial notice as to the existence of those records and the undisputed portions therein, but not with respect to facts the majority finds on the basis of those records. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

an evidentiary showing that it absolutely will comply with the Act going forward.

That is what has happened here. In response to our call for supplemental briefing on whether the case was moot, Naples said only that "[t]he post-judgment development of an NPDES permit, coupled with Naples' consistent dedication to past and future compliance with all other permit requirements, demonstrates that it is absolutely clear that [the] allegedly wrongful conduct is not reasonably likely to recur."

These statements are bromides from a lawyer. The actual facts sharply undercut Naples' assurances. It is undisputed that Naples has put on an annual fireworks show over Alamitos Bay continuously since 2011, which is ten years before this suit was filed in 2021. It is also undisputed that Naples could have applied for an individual NPDES permit to cover the shows at any time during this ten-year period but chose not to do so. *See Ecological Rts. Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000) ("Industrial facilities in California subject to the Clean Water Act must either comply with the General Permit or obtain individualized NPDES permits."). Instead, Naples applied for an NPDES permit in 2023 only when a general permit became available, and after this lawsuit was filed and the District Court had entered judgment.

This is hardly a record of "dedication to past and future compliance" with the Clean Water Act, as Naples and the majority would have it. Nothing in this record establishes why it might be "absolutely clear" that Naples will not discharge without a permit again. The general NPDES permit that Naples holds requires the payment of an annual fee. There is no evidence that Naples will pay the annual fee

going forward.  The District Court certainly did not find that it would.  The fact that Naples was perfectly comfortable launching fireworks without a permit for over 12 years is a substantial reason to doubt its commitment to compliance.

The majority opinion tries to put a good gloss on all of this by saying that "[b]y obtaining an NPDES permit, Naples has shown that the only Clean Water Act violation that CERF asserts is not reasonably expected to reoccur."  But "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000); *see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  A defendant "must [still] prove '"no reasonable expectation"' remains that it will 'return to [its] old ways.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (second alteration in original) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)).

The majority sidesteps this by concluding, without any support in the record, that "it would be 'too speculative' to think that Naples would somehow lose its NPDES permit or let it lapse" (citation omitted).  This is merely a surmise, which does not satisfy the stringent standard for mootness demanded under *Laidlaw*.  In effect, the majority equates Naples' "voluntary compliance" with satisfaction of the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," and thereby writes Naples a blank check to "return to [its] old ways." *Laidlaw*, 528 U.S. at 189-90 (citations omitted).  The majority seeks to soothe by assuring that, "even if [Naples stops paying the fee], the loss of the permit is not likely to evade review."  Yet the majority does not say what would prevent Naples from rendering that next case moot by belatedly coming into compliance, as it did

here.  Under the majority's conclusion here, Naples would be perfectly free to keep its act going well past closing time.

*Laidlaw* illustrates why this result is wrong.  Defendant Laidlaw had represented to the Supreme Court of the United States -- "after the Court of Appeals issued its decision but before th[e] Court granted certiorari" -- that "the entire incinerator facility in Roebuck was permanently closed, dismantled, and put up for sale, and all discharges from the facility permanently ceased." 528 U.S. at 179.  The Supreme Court acknowledged that the closure "might moot the case" but nevertheless remanded the case for further consideration, because "[t]he effect of both Laidlaw's compliance and the facility closure on the prospect of future violations is a disputed factual matter." *Id*. at 193-94.

So too, here.  The potential effect of Naples' NPDES permit on the prospect of future violations is an issue that has "not been aired in the lower courts," *id.* at 194, and there are a number of factual issues that should be determined by the District Court in the first instance.  The majority tries to plug this hole by stating that Naples "obtained the NPDES permit precisely to comply with its Clean Water Act obligations," and that its "full[] complian[ce] with all inquiries from the Los Angeles Regional Water Quality Control Board" in 2017 and 2018 shows that Naples will not violate the Act again.  But these are new findings of fact that the District Court did not make.[1]  The District Court also did

---

[1] It should not be lost that the majority opted to grant CERF's motion for judicial notice, underscoring the extent to which its conclusions rest on findings inappropriately made by this Court in the first instance.  I concur in the grant of judicial notice only as to the undisputed portions of the public records included in CERF's motion, *see Khoja v. Orexigen*

not determine whether Naples would comply with continuing permit requirements, like paying the fee, a commitment CERF challenges with good reason.  These are pressing, disputed questions of fact essential to the mootness inquiry that the District Court has not addressed.  If the "permanent" closure of a facility is not conclusive of mootness without further evidence and proceedings, how can it possibly be enough that Naples simply obtained a renewable permit, without evidence -- or even a representation -- that it will comply with continuing requirements for keeping that permit?  *Cf. Fikre*, 601 U.S. at 242 ("Put simply, the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past.").

*Mississippi River Revival, Inc. v. City of Minneapolis*, 319 F.3d 1013 (8th Cir. 2003), which the majority says involved "facts like ours," actually cuts against the conclusion that the plaintiff's claims of relief for an injunction and civil penalties are moot.  The case involved defendants that obtained a permit after being sued in a citizen's action for discharges without a permit, but that is where any similarity ends.

*Mississippi River* was not a case of voluntary cessation, like this one.  To the contrary, the Eighth Circuit emphasized that, despite the municipal defendants having "complied with their storm water permit obligations by timely filing permit applications," the unpermitted discharges occurred

---

*Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), but not with respect to the findings the majority makes based on those records, *see* Maj. Op. at 13, 13 n.1.

because the state agency responsible for issuing permits inexplicably failed to act on the applications, without any fault on the municipalities' parts. *Id.* at 1015-17. The cities could stop neither "rain and snow from falling" nor the consequent discharges of pollutants in storm runoff, and so their discharges occurred without a permit, even though they had done everything possible to comply with the law, "solely [because of] the [state agency's] delay in acting." *Id.* at 1016-17.

That is not the situation here. For a decade Naples was perfectly free to seek an individual discharge permit for the annual fireworks show. It chose not to do so and sought a permit only after CERF sued and the Los Angeles Regional Water Quality Control Board made NPDES permits available on an easier-to-get, general basis. Naples flouted the Clean Water Act for a decade and brought itself into compliance only after it was haled into district court.

The Eighth Circuit expressly stated that these were not the facts that might support a finding of mootness. The court emphasized that the case before it did not involve, as ours does, industrial or commercial "polluters [who] had the alternative of not discharging until the NPDES permit issued" and who "benefitted economically from continuing to discharge without a permit." *Id*. at 1017. "[U]nlike industrial and commercial point source operators, the Cities simply could not stop the unpermitted discharges." *Id*. The opposite was true for Naples.

The Eighth Circuit "refuse[d] to speculate that th[ose] public bodies will allow the resumption of discharges without a permit" for reasons entirely inapplicable here. *Id.* The court highlighted the "overwhelming evidence" establishing that the municipalities' permit applications

were timely filed pursuant to the Clean Water Act's mandates and that the cities did all they could to comply with the law. *Id.* at 1015-16. The record before us shows that Naples flouted the permit requirements for years and sought to comply only after the start of litigation. The Eighth Circuit's refusal to speculate also relied heavily on the facts that "the Cities have a public duty to operate their storm sewer systems" and that past noncompliance was "caused solely by the [state agency's] delay in acting." *Id.* at 1016-17. Neither of those things are true with respect to Naples.

Decisions issued after *Laidlaw* by the Supreme Court and our circuit raise further doubt about the majority's conclusion that the demanding standard for mootness has been met here. *See Decker v. Northwest Envtl. Def. Ctr.*, 568 U.S. 597, 609-10 (2013) (explaining that a case was not moot despite an agency's amendment to the relevant regulation because the "earlier version" of the rule "governed petitioners' past discharges, which might be the basis for the imposition of penalties even if, in the future, those types of discharges will not require a permit" and that a court could still order, *inter alia*, civil penalties and injunctive relief requiring defendants to "incur certain environmental-remediation costs to alleviate harms attributable to their past discharges"); *San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155, 1160 (9th Cir. 2002) (holding a case was not moot even though the defendant "no longer own[ed] or operate[d] the source of pollution" because, otherwise, "not only would Tosco be able to escape the consequences of its pollution, but any subsequent owner could continue the illegal pollution, confident in its ability to escape any potential monetary sanctions by re-selling the Diablo facility in its turn").

Consequently, in my view, Naples has not come close to meeting the "heavy" burden of establishing that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur," and further proceedings before the District Court are necessary. *Gwaltney*, 484 U.S. at 66 (emphasis in original) (citation omitted).  To conclude otherwise, as the majority does, weakens the test of mootness in a way that undermines the comprehensive environmental protections mandated by Congress in the Clean Water Act, and loses sight of the role of the court of appeals as a *reviewing* court.  I would decline to find CERF's claims for injunctive relief and civil penalties moot and instead remand to the District Court so that "[t]hese issues . . . [may be] aired in the lower court[]." *Laidlaw*, 528 U.S. at 194.