FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a non-profit corporation, | No. 23-55469 |
| | D.C. No. 2:21-cv-09172-MCS-JEM |
| *Plaintiff-Appellant*, | |
| v. | |
| NAPLES RESTAURANT GROUP, LLC, a California Limited Liability Company; JOHN MORRIS, an individual, | ORDER AND OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted May 6, 2024
Pasadena, California

Filed November 5, 2025

Before: Danielle J. Forrest and Patrick J. Bumatay, Circuit

Judges, and James Donato,[*] District Judge.

Opinion by Judge Bumatay;
Concurrence by Judge Donato

## SUMMARY[**]

### Environmental Law / Mootness

The panel filed (1) an order withdrawing a prior opinion and dissent, replacing them with a new opinion and concurrence, and denying a petition for rehearing en banc as moot without prejudice; and (2) a new opinion (a) vacating the district court's judgment after a bench trial in favor of Naples Restaurant Group and its owner John Morris in a citizen suit brought by Coastal Environmental Rights Foundation ("CERF") under the Clean Water Act and (b) remanding with instructions to the district court to dismiss the case as moot.

The district court found that when Naples set off fireworks without a permit, there was one "low break," when a firework exploded prematurely and fell into Alamitos Bay, but that was not enough to establish that Naples was in continuing violation of the Act. Naples later received a National Pollutant Discharge Elimination System permit for its annual fireworks event from the Los Angeles Region of

---

[*] The Honorable James Donato, United States District Judge for the Northern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the California Regional Water Quality Control Board.  The panel issued an opinion holding that this general NDPES permit mooted this case, but CERF alleged in a petition for rehearing that Naples had failed to pay its annual permitting fee.  On limited remand, the district court found that Naples had continued to pay the annual fee and that it was absolutely clear that Naples's discharge of pollutants without a permit was not reasonably likely to recur.

The panel concluded that this case was moot.  CERF's requests for declarative and injunctive relief would not afford it any relief from current or future violations of the Act, and it could not seek injunctive relief for wholly past violations.  Further, no ground existed to believe that Naples's Clean Water Act violations were reasonably likely to recur.  Agreeing with the Eighth Circuit, and disagreeing with other circuits, the panel concluded that CERF's requests for civil penalties also were moot because they no longer had a deterrent effect following the issuance of the permit and under *Friends of the Earth, Inc. v. Laidlaw Env't Servs., (TOC), Inc.*, 528 U.S. 167 (2000), which established the same mootness standard for claims for civil penalties and for injunctive relief under the Clean Water Act.  Lastly, CERF's request for attorneys' fees did not support its continued interest in this action.

Concurring, District Judge Donato wrote that because the district court's additional factual determinations on limited remand were not clearly erroneous, he agreed that the case was moot.

## COUNSEL

Livia B. Beaudin (argued), Amy C. Johnsgard, and Marco A. Gonzalez, Coast Law Group, Encinitas, California; Xiao Wang, University of Virginia Law School, Charlottesville, Virginia; for Plaintiff-Appellant.

Anusha Pillay (argued), Collier Walsh Nakazawa LLP, Seattle, Washington; Joseph A. Walsh II and Caroline J. Wilson, Collier Walsh Nakazawa LLP, Long Beach, California; for Defendants-Appellees.

Katelyn Kinn and Richard Smith, Smith & Lowney PLLC, Seattle, Washington, for Amici Curiae Puget Soundkeeper Alliance, Columbia Riverkeeper, and Los Angeles Waterkeeper.

## ORDER

The opinion filed on September 18, 2024, 115 F.4th 1217 (9th Cir. 2024), is hereby withdrawn and replaced with the following opinion.

The petition for rehearing en banc, Dkt. No. 58, is denied as moot without prejudice. Fed. R. App. P. 40; 9th Cir. R. 40-1. A petition for rehearing based on the new opinion may be filed.

**OPINION**

BUMATAY, Circuit Judge:

This case started with a bang several years ago, when an environmental group sued a restaurant and its owner over its annual Fourth of July fireworks show.  As any attendee of a fireworks show knows, fireworks all have one thing in common—they explode.  They burst into different shapes and sparkling colors.  But sometimes fireworks malfunction—some, hopefully only a few, fizzle on ignition.  Others result in what's called a "low break"—exploding prematurely lower in the air.

The environmental group, Coastal Environmental Rights Foundation ("CERF"), ignited this litigation by alleging that Naples Restaurant Group, LLC, and its owner John Morris (collectively "Naples"), violated the Clean Water Act ("the Act") by setting off fireworks that fell into Alamitos Bay in Los Angeles without a permit.  Indeed, following a bench trial, the district court found that one time a Naples firework ended in a low break—falling into the water below.  But the district court held that wasn't enough to establish Naples was in continuing violation of the Act.  CERF then appealed.  Ordinarily, we would review the merits of the district court's decision.

But other developments changed this case's trajectory.  After the district court's verdict, the Los Angeles Region of the California Regional Water Quality Control Board ("the Board") began issuing a general permit—known as a National Pollutant Discharge Elimination System ("NPDES") permit—authorizing public fireworks displays over Los Angeles waters.  Naples applied for and received an NPDES permit for its annual event.  While we may have

anticipated an appeal filled with pyrotechnic testimony, launch angles, and video replays, we are now left with a simple question: Does the general NPDES permit moot this case?

To decide that issue, we assess whether the alleged Clean Water Act violations could "reasonably be expected to recur." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (simplified).  When it's "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur," a citizen suit under the Clean Water Act becomes moot.  *Id.* (simplified).  That's the situation here.  CERF alleged Naples violated the Act by discharging pollutants *without a permit*, but Naples now has a permit authorizing that very discharge.  So this case is moot, having fizzled like a malfunctioning firework.

## I.

On the third of July each year, Naples hosts its "Big Bang on the Bay" event at its restaurant, Boathouse on the Bay. Naples has held the event every year since 2011, except during 2020 because of COVID-19.  As one might expect, the fireworks show is the main feature of the event.  Naples launches hundreds of fireworks off a barge in Alamitos Bay with the help of a licensed pyrotechnic operator.

CERF, a non-profit environmental organization, filed a citizen suit under the Clean Water Act against Naples in 2021.  CERF alleged that Naples violated the Act because, without a permit, the fireworks Naples launched during its annual Independence Day show fell into and polluted the Alamitos Bay.  CERF sought declarative and injunctive relief, civil penalties, and attorneys' fees.

Following a two-day bench trial, in April 2023, the district court rendered a verdict for Naples.  The district court found that CERF established that one of Naples's fireworks from the 2022 show resulted in a "low break"—a firework malfunction that caused its stars and embers to fall into the Bay—which constituted the discharge of a pollutant into the water.  But the district court also found that CERF proved no other fireworks resulted in a similar discharge.  As a result, there was insufficient evidence to conclude that Naples's violations were likely to continue.  Thus, the district court held that CERF failed to prove "continuous and ongoing violations" of the Clean Water Act and dismissed CERF's claim without prejudice.  CERF appealed.

Things changed a month after the district court's ruling.  In May 2023, the Board began offering NPDES permits authorizing "discharges from public firework displays . . . into waters of the United States in the Los Angeles Region."  Cal. Reg'l Water Quality Control Bd., Gen. Ord. R4-2023-0180 3 (2023) ("Fireworks General Order"); *see also* 33 U.S.C. § 1342(b) (authorizing state permit programs).  The NPDES permit is available to "[a]ny person who proposes to discharge pollutants from the public display of fireworks to surface waters."  Fireworks General Order at 3.  Applicants like Naples, who "pose no significant threat to water quality," must follow the permit's restrictions and pay an annual fee according to a fee schedule, *id.*; *see* Cal. Code Regs tit. 23, § 2200(a)(10).  Naples applied for an NPDES permit.  In June 2023, the Board granted Naples a permit.

We first issued an opinion in this case in September 2024.  *See Coastal Env't Rts. Found. v. Naples Rest. Grp.*, 115 F.4th 1217 (9th Cir. 2024).  In that opinion, we held that issuance of the NPDES permit made this case moot.  *Id.* at

1221.  But in its petition for rehearing of our initial decision, CERF alleged that Naples had failed to pay its annual permitting fee, citing an invoice marked "unpaid" issued to Naples in November 2023.  Naples disputed this allegation, attributing the discrepancy to "an apparent clerical error."  Given the factual dispute, we remanded the matter to the district court solely to determine (1) whether Naples has continuously paid the annual fee for the NPDES permit and (2) whether it is absolutely clear that Naples's alleged violations of the Clean Water Act could not reasonably be expected to recur.

On remand, the district court found that Naples has continued to pay the annual fee for the NPDES permit.  At first, Naples paid $3,274 for the 2023 permit.  Naples later learned that the permit cost $3,576.  After receiving notice of the deficiency, Naples attested that it paid the balance.  The district court was satisfied that the payment discrepancy was "an administrative error," and, thus, "there is no indication that [Naples] will not pay for the permit in the future."  The district court further found that Naples has shown compliance with "various other regulatory requirements during the fireworks shows, such as water quality monitoring investigative orders."  The district court also didn't fault Naples for not requesting an individual NPDES permit before 2022 because the Board had never issued such a permit for fireworks displays.  Thus, the district court concluded that "it is absolutely clear that [Naples's] discharge of pollutants without a permit is not reasonably likely to recur."

With all of these facts in mind, we now consider CERF's appeal anew.

## II.

"The fundamentals of standing are well-known and firmly rooted in American constitutional law." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).  Most basic among those principles is that a case or controversy must include (1) an injury-in-fact, (2) caused by the defendant's acts, (3) that likely would be redressed by the requested judicial relief.  *Id*.  Further, these conditions "must remain extant at all stages of review, not merely at the time the complaint is filed." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) (simplified).  Take redressability.  "[W]hen it is impossible for a court to grant any effectual relief whatever to the prevailing party[,]" there is nothing left for the court to do and the "case becomes moot."  *Id.* (simplified).  And Article III tasks us with an ongoing duty to assess mootness, regardless of the parties' views on the question.  *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Although neither party has urged that this case is moot, resolution of the question is essential if federal courts are to function within their constitutional sphere of authority.").  Finally, we review mootness de novo.  *Smith v. Univ. of Wash., L. Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000).

### A.

The Clean Water Act provides a comprehensive scheme "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Gwaltney*, 484 U.S. at 52 (quoting 33 U.S.C. § 1251(a)).  To meet this goal, the Act prohibits "the discharge of any pollutant" into navigable waters unless expressly authorized.  33 U.S.C. § 1311(a).  The Environmental Protection Agency ("EPA") or a State (with EPA approval) may authorize the discharge

of pollutants into navigable waters through an NPDES permit. *See id.* § 1342(a)–(b).

The Act includes a citizen suit provision that authorizes a citizen to commence a civil action "against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation." *Id.* § 1365(a)(1). The citizen plaintiff must have "an interest which is or may be adversely affected" by the defendant. *Id*. § 1365(g). "To impel future compliance with the Act," *Friends of the Earth, Inc. v. Laidlaw Env't Servs., (TOC) Inc.*, 528 U.S. 167, 173 (2000), when a citizen prevails, "the [district] court may order injunctive relief and/or impose civil penalties payable to the United States Treasury," *Gwaltney*, 484 U.S. at 53 (citing 33 U.S.C. § 1365(a)); *see also Laidlaw*, 528 U.S. at 173. It also permits attorneys' fees for the prevailing party. 33 U.S.C. § 1365(d).

In *Gwaltney* and *Laidlaw*, the Supreme Court set guideposts for when citizen suits brought under the Clean Water Act become moot.

Start with *Gwaltney*. That case first looked at jurisdiction over a citizen suit. Because § 1365(a)'s text requires that a defendant "be in violation" of the Act, the Court held that the citizen-suit provision only authorizes suits to abate *ongoing* or *future* violations—it "does not permit citizen suits for wholly past violations." *Gwaltney,* 484 U.S. at 64. Thus, to authorize a citizen suit, the plaintiff must allege that the defendant is in "a state of either continuous or intermittent violation" so that "a reasonable likelihood [exists] that [the defendant] will continue to pollute in the future." *Id.* at 57. Because of the ongoing-violation requirement, *Gwaltney* recognized that mootness could upend the citizen suit while the litigation remains

pending.  *See id.* at 66–67.  The allegations of ongoing violations, for example, may cease to be true "because the defendant begins to comply with the Act." *Id.* at 66.  In that circumstance, "[l]ongstanding principles of mootness . . . prevent the maintenance of suit when there is no reasonable expectation that the wrong will be repeated." *Id.* (simplified).  Given that it's the defendant's voluntary actions which trigger mootness, the defendant's burden to prove mootness "is a heavy one." *Id.* (simplified).  To dismiss a case as moot, "[t]he defendant must demonstrate that it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (simplified); *see also id.* at 69 (Scalia, J., concurring) ("When a company has violated an effluent standard or limitation, it remains, for purposes of § [1365(a)] 'in violation' of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation.").  This heavy burden "protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while . . . also protect[ing] plaintiffs from defendants who seek to evade sanction by predictable protestations of repentance and reform." *Id.* at 66–67 (simplified).  Simply put, once an ongoing violation's abatement is "absolutely clear," then the citizen suit becomes moot.

Next came *Laidlaw*.  There, the Court first reiterated that civil penalties "afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of *ongoing unlawful conduct*." *Laidlaw*, 528 U.S. at 186 (emphasis added).  But citizen plaintiffs may not seek civil penalties to remedy past violations. *Id.* at 187–88 (recognizing that citizen plaintiffs "may not sue to assess

penalties for wholly past violations" (discussing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)); *see also Steel Co.*, 523 U.S. at 106–07. The Court explained that civil penalties serve two purposes: (1) they "promote immediate compliance by limiting the defendant's economic incentive to delay its attainment of permit limits," and (2) "they also deter future violations." *Laidlaw*, 528 U.S. at 185. Even then, the Court warned that "there may be a point at which the deterrent effect of a claim for civil penalties becomes so insubstantial or so remote that it cannot support citizen standing." *Id*. at 186.

Turning to mootness, *Laidlaw* reaffirmed that courts must apply a "stringent" standard when deciding whether a defendant's voluntary cessation of the challenged conduct has mooted a case. *Id*. at 189. In *Laidlaw*, the Fourth Circuit determined a claim for civil penalties was moot "once the defendant fully complied with the terms of its [NPDES] permit and the plaintiff failed to appeal the denial of equitable relief." *Id*. at 173. But, in the Court's view, the Fourth Circuit failed to hold the defendant to the "heavy burden" of showing that its "challenged conduct cannot reasonably be expected to start up again." *See id.* at 189 (simplified). Instead, the Fourth Circuit simply deemed the suit for civil penalties moot because "citizen plaintiffs lack standing to seek civil penalties for wholly past violations." *Id*. The Court explained that the Fourth Circuit's mootness analysis was insufficient. *Id*. at 189–90. Because mootness is distinct from standing, it is not a matter of simply checking to see if the defendant's violation was abated. *Id*. Rather, mootness also requires asking whether the possibility of the defendant resuming the harmful conduct was "not too speculative to overcome mootness" or whether resumption of wrongful conduct was capable of repetition but evading

review.  *Id*.  Thus, the Court held that the case would only become moot when later "events made it absolutely clear that [the defendant's] permit violations could not reasonably be expected to recur."  *Id.* at 193.  Because factual disputes existed on that question, the Court remanded for the lower courts to consider those facts.  *Id.* at 193–94.

A few principles emerge from *Gwaltney* and *Laidlaw*. First, the touchstone for civil penalties under the Clean Water Act is deterrence.  Civil penalties deter current or future violations—they do not remedy wholly past violations.  Second, to establish mootness, the defendant bears a heavy burden to show that it's absolutely clear that past violations could not reasonably be expected to recur. We administer this test stringently.  And finally, when there's no reasonable possibility of a future violation, civil penalties lose their deterrent effect and become moot.

## B.

Applying those principles, we turn to whether Naples's NPDES permit mooted CERF's claims for relief.  Recall that CERF requested three types of relief in its complaint: (1) declaratory and injunctive relief, (2) civil penalties, and (3) attorneys' fees.  We address each separately. *See Powell v. McCormack*, 395 U.S. 486, 496 n.8 (1969) ("Where several forms of relief are requested and one of the[] requests subsequently becomes moot, the Court has [to] still consider[] the remaining requests.").

## 1.

First, CERF requested declaratory and injunctive relief. CERF asked the district court to declare Naples "to have violated and to be in violation of the Clean Water Act," to enjoin Naples "from discharging pollutants unless and until

[it] obtain[s] an NPDES permit," and "to take appropriate actions to restore the quality of [Alamitos Bay] impaired by their unlawful discharge of pollutants."  "A request for injunctive relief remains live" only when a "present harm" is left to enjoin;  "[p]ast exposure to illegal conduct" is insufficient. *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (simplified).  And a request for declaratory relief is no longer live when the declaration sought "is not only worthless to [the plaintiffs], [but] is seemingly worthless to all the world." *Steel Co.*, 523 U.S. at 106.

Even under *Laidlaw*'s "stringent" review for mootness, CERF's requests for declaratory and injunctive relief are moot. *Cf.* 528 U.S. at 189.  CERF alleged that Naples was violating the Clean Water Act by discharging pollutants into Alamitos Bay *without an NPDES permit*.  But Naples has carried its "heavy burden," *cf. id.* (citation modified), to show that—with its newly obtained permit that expressly "authorize[s] discharges from public firework displays"—it can no longer violate the Act by discharging pollutants *without a permit*.  With the permit, Naples may continue its Fourth of July tradition in full compliance with the Act.  So any request for injunctive or declaratory relief would not afford CERF any relief from current or future violations of the Clean Water Act.  Nor can CERF seek injunctive relief for wholly past violations.  *See Gwaltney*, 484 U.S. at 59 ("[T]he harm sought to be addressed by the citizen suit lies in the present or the future, not in the past.").

Further, no ground exists to believe that Naples's alleged Clean Water Act violations are reasonably likely to recur. As the district court found, Naples has a demonstrated record of complying with its regulatory requirements.  Even CERF conceded in its complaint that Naples complied with all

inquiries from the Board regarding the fireworks show.  And Naples applied for a general NPDES permit to cover its annual firework show as soon as the Board started issuing them.  Rather than acquiring the permit to moot this case, Naples promptly obtained the NPDES permit to comply with its Clean Water Act obligations.  And we agree with the district court that it doesn't matter that Naples never sought an individual NPDES permit before the Board began issuing general permits.  That's because the Board had never required a fireworks operator to obtain an individual NPDES permit and had never issued an individual NPDES permit for fireworks displays.  Thus, an individual NPDES permit was both "unnecessary and unavailable" before this litigation.

And it would be "too speculative" to think that Naples would somehow let its NPDES permit lapse.  *See Laidlaw*, 528 U.S. at 190.  The district court found that Naples never stopped paying for the permit's annual fee.  Although CERF brought evidence that Naples had not paid the 2023 permit fee, the district court established that "an administrative error" caused the 2023 payment discrepancy and that Naples quickly remedied the issue once it was brought to its attention.  The district court also discerned that "there is no indication that [Naples] will not pay for the permit in the future."  Aside from the now-resolved 2023 fee discrepancy, CERF provides no evidence to support its view that Naples may lose its permit.  And even assuming otherwise, the potential loss of the permit would not be likely to evade review.  *See id.* (noting the exception to mootness for actions capable of repetition yet evading review).

Finally, this isn't a case of an NPDES-permit holder violating the permit's existing restrictions, which may raise the question of the permit holder's future compliance.  Even if Naples were to breach its NPDES permit requirements,

that violation would be a separate claim and would not fall under the Clean Water Act violation CERF alleged in its complaint.   *See* 33 U.S.C. §§ 1319(a)(1), 1342(b)(7) (providing an action against those who violate the conditions of an NPDES permit).

We thus agree with the district court that it is absolutely clear that Naples's alleged wrongful behavior could not reasonably be expected to recur.  By obtaining a general NPDES permit, Naples has shown that a future discharge of a pollutant without a permit is not reasonably expected.  This moots CERF's request for injunctive and declaratory relief.

**2.**

Next, CERF sought civil penalties for Naples's alleged Clean Water Act violations.  The Act provides for civil penalties "not to exceed $25,000 per day for each violation" that are payable to the U.S. Treasury.  *See* 33 U.S.C. §§ 1365(a), 1319(d); *see also Gwaltney*, 484 U.S. at 53. CERF argues that its claim for civil penalties would provide CERF with effective relief, which keeps this suit alive, even if it's absolutely clear that Naples will not discharge fireworks without a permit again.  While this is a harder question, we ultimately disagree.

We have not definitively addressed whether a request for civil penalties under the Clean Water Act becomes moot when a defendant obtains an NPDES permit that moots injunctive relief.  This question turns on whether we should treat civil penalties differently than injunctive relief for justiciability purposes.  The question has divided other circuit courts.

On one side, the Second, Third, Fourth, Seventh, and Eleventh Circuits all view civil penalties as distinct from

injunctive relief and agree that, even when injunctive relief becomes inappropriate, *any* request for civil penalties defeats mootness.  *See, e.g.*, *Atl. States Legal Found., Inc. v. Pan Am. Tanning Corp.*, 993 F.2d 1017, 1021 (2d Cir. 1993) ("We hold . . . that a defendant's ability to show, after suit is filed but before judgment is entered, that it has come into compliance with limits on the discharge of pollutants will not render a citizen suit for civil penalties moot."); *Nat. Res. Def. Council, Inc. v. Texaco Ref. and Mktg., Inc.*, 2 F.3d 493, 503 (3rd Cir. 1993) ("[We] hold that claims for damages are not moot because an intervening NPDES permit eliminates any reasonable possibility that [the defendant] will continue to violate specified parameters."); *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696 (4th Cir. 1989) ("[T]he penalty factor keeps the controversy alive . . . even though the defendant has come into compliance and . . . civil penalties [are] assessed for past acts of pollution."); *Atl. States Legal Found., Inc. v. Stroh Die Casting Co*., 116 F.3d 814, 820 (7th Cir. 1997) ("If the violation is cured at some point while the suit is pending . . . the case nevertheless does not become moot" because even if "the citizen plaintiffs would lose their right to an injunction," civil penalties "would be recoverable"); *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir. 1990) ("[T]he mooting of injunctive relief will not moot the request for civil penalties as long as such penalties were rightfully sought at the time the suit was filed.").

Only the Eighth Circuit has split with the other circuits. *See Miss. River Revival, Inc. v. City of Minneapolis*, 319 F.3d 1013 (8th Cir. 2003).  There, as here, plaintiffs accused the defendants of discharging a pollutant without an NPDES permit.  *Id.* at 1015.  The defendants later obtained the

permits.  *Id.*  Based on *Laidlaw*, the Eighth Circuit applied the same mootness inquiry to both the request for civil penalties and injunctive relief.  *Id.* at 1015–16.  Like with injunctive relief, the Eighth Circuit ruled that claims for civil penalties are moot when "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 1016 (quoting *Laidlaw*, 528 U.S. at 189).  Thus, the Eighth Circuit held that "citizen suit plaintiffs lack Article III standing to recover civil penalties for past violations because the payment of money to the United States Treasury does not redress any injury to them caused by the violations."  *Id.*

We agree with the Eighth Circuit for several reasons.

First, only the Eighth Circuit addressed the same type of Clean Water Act violation alleged here—discharging pollutants without a permit.  All the other circuit cases involved allegations that the defendant violated an existing NPDES permit but later came into compliance.  As we stated earlier, that factual scenario implicates different concerns for continued compliance with the Act.  Thus, only the Eighth Circuit spoke to the same factual allegations as here.

Second, only the Eighth Circuit decided the issue after *Laidlaw*.  The Eighth Circuit viewed *Laidlaw* as "overrul[ing] these [other circuit] decisions, at least in part, by equating citizen suit claims for civil penalties and claims for injunctive relief for mootness purposes."  *Id.* at 1016 n.3.[1]  Like the Eighth Circuit, we acknowledge the weight of

---

[1] After *Laidlaw*, the Second Circuit declined to find a Clean Water Act citizen suit moot after the defendant obtained an NPDES permit based on the incompleteness of the factual record.  *See Bldg. and Const. Trades*

these other circuit court cases, but their persuasive strength has changed after *Laidlaw*.

Finally, we concur with the Eighth Circuit that *Laidlaw* established the same mootness standard for claims for civil penalties and for injunctive relief under the Clean Water Act. Our understanding of *Laidlaw*'s mootness standard comes from its discussion of the purpose of civil penalties. The Court explained that civil penalties "encourage defendants to discontinue current violations and deter them from committing future ones." *Laidlaw*, 528 U.S. at 186. So even if a defendant comes into compliance with the Act after the start of litigation—thereby mooting injunctive relief—civil penalties still may deter "the prospect of future violations." *Id.* at 193. Indeed, sometimes a defendant's post-litigation actions may not "make[] future . . . violations any less likely, deterrence any less necessary, or the deterrent effect of civil penalties any less potent." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000). So coming into compliance with the Act doesn't necessarily extinguish the need for civil penalties. But when post-litigation events "ma[k]e it absolutely clear that the [defendant's] violations could not reasonably be expected to recur," then claims for civil penalties lose their deterrent effect and become moot. *Laidlaw*, 528 U.S. at 193. Put simply, *Laidlaw*'s mootness rule is clear: even when a defendant's compliance moots injunctive relief, civil penalties remain available to deter future violations, unless

---

*Council of Buffalo v. Downtown Dev.*, 448 F.3d 138, 152 (2d Cir. 2006) ("We cannot say, based on the current record, . . . that it is 'absolutely clear' that the cause of action asserted as to alleged violations is moot, because it is unclear whether the permit allegedly obtained . . . covers . . . all those areas where the alleged violations had been occurring."). We have none of these factual disputes here.

it's absolutely clear that the alleged violation could not reasonably be expected to recur.[2] *Id.*

And *Laidlaw*'s mootness standard makes constitutional sense.  Article III requires parties to maintain a "continuing interest" in the litigation.  *See Laidlaw*, 528 U.S. at 192.  The Clean Water Act also requires citizen plaintiffs "hav[e] an interest which is or may be adversely affected."  33 U.S.C. § 1365(g).  Restricting civil penalties to only cases where they may deter future violations ensures both compliance with Article III and the Act.  *See Gwaltney*, 484 U.S. at 70 (Scalia, J., concurring in part and concurring in the judgment) ("The constitutional requirement for . . . injury is reflected in the statute itself, which defines 'citizen' as one

---

[2] This reading reflects Justice Scalia's understanding of the *Laidlaw* majority.  *See Laidlaw*, 528 U.S. at 211 n.5 (Scalia, J., dissenting) ("[T]he opinion for the Court appears to recognize that a claim for civil penalties is moot when it is clear that no future injury to the plaintiff at the hands of the defendant can occur.").  On the other hand, Justice Stevens disagreed.  *See id.* at 196 (Stevens, J., concurring) ("[P]etitioners' claim for civil penalties would not be moot even if it were absolutely clear that respondent's violations could not reasonably be expected to recur because respondent achieved substantial compliance with its permit requirements after petitioners filed their complaint but before the District Court entered judgment.").  Justice Stevens's reading seemingly conflicts with the majority's statement that the defendant's "facility closure, like [its] earlier achievement of substantial compliance with its permit requirements, might moot the case" and the Court's direction for the lower courts to determine, as a factual matter, the effect of the defendant's compliance actions "on the prospect of future violations."  *Id.* at 193–94.  The majority's discussion there would be irrelevant if, as Justice Stevens suggested, the request for civil penalties could *never* be mooted.  In any case, Justice Stevens's statement was limited to defendants who violate the terms of an existing NPDES permit—not defendants who discharge without a permit but later obtain a permit, as here.

who has 'an interest which is or may be adversely affected.'" (quoting 33 U.S.C. § 1365(g))).  Otherwise, when no threat of future violations exists, the citizen plaintiff is not reasonably expected to suffer a future injury and so retains no constitutionally recognized interest in civil penalties, particularly because civil penalties go to the U.S. Treasury. In other words, when Clean Water Act violations aren't reasonably expected to recur, civil penalties lose their deterrent effect and they no longer remedy a citizen plaintiff's injury, which means the citizen plaintiff has no cognizable Article III interest.

CERF asserts that *Decker* contradicts this reading of *Laidlaw*.  We disagree.  In *Decker*, the Supreme Court confronted whether a citizen suit was mooted after the EPA amended stormwater regulations shortly before oral argument in the case.  *See* 568 U.S. at 604, 609.  Under the old regulation, the Ninth Circuit held that the defendant needed to obtain an NPDES permit to discharge.  *Id*. at 607. After the rule change, the parties contested whether a permit was still required.  *Id*. at 605.  The citizen plaintiff argued the defendant violated the Act under *both* the earlier and amended regulations.  *Id*. at 610.  Thus, the Court said that "a live controversy continues to exist regarding whether [the defendant] may be held liable for unlawful discharges under the earlier version of the [stormwater regulation]."  *Id*. at 609–10.  So, *Decker* stands for the unremarkable proposition that a "case becomes moot only when it is *impossible* for a court to grant any effectual relief."  *Id*. at 609 (simplified) (emphasis added).  Unlike here, no court in *Decker* found that the defendant complied with the Clean Water Act.  But Naples has definitively remedied the alleged violation of discharging a pollutant without a permit.  That key factual difference allowed for both civil penalties and

"injunctive relief for both past and ongoing violations" in *Decker*, but it moots that same relief here. *Cf. id*. at 610.

We also reject CERF's assertion that a trio of Ninth Circuit cases—*Ecological Rts.*, 230 F.3d 1141; *S. F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002); and *United States v. Able Time, Inc.*, 545 F.3d 824 (9th Cir. 2008)—keep this case alive. None of those cases disturb our conclusion that the civil penalties here are moot because they no longer have a deterrent effect.

In *Ecological Rights*, the defendant's violations of an earlier permit raised the prospect of continuing violations under a later permit. *See* 230 F.3d at 1153. Indeed, the defendant likely continued to violate *both* permits given that the new permit was "stricter." *Id.* So the later permit did not moot the case because civil penalties could discourage future violations and could offer redress to the citizen plaintiff.

In *San Francisco BayKeeper*, we considered "whether [a] plaintiff can maintain a suit against a defendant firm that no longer operates the polluting facility at issue." 309 F.3d at 1155. We concluded that civil penalties would still serve an "important deterrent function" for future owners because the "polluting facility . . . continue[d] to operate." *Id.* at 1155; *see also id.* at 1160.

And in *Able Time*—which was not a citizen suit and which involved civil penalties under a different statute, 19 U.S.C. § 1526(f)—we simply determined that the action was "not moot because the civil penalty remedy [was] still available." 545 F.3d at 828. That case is thus unrelated to whether a Clean Water Act citizen suit becomes moot once civil penalties lose their deterrent value.

In sum, following *Laidlaw*, a claim for civil penalties is moot when the defendant shows that it's absolutely clear that the alleged violation could not reasonably be expected to recur.  And here, when CERF's only claim is that Naples violated the Clean Water Act by discharging fireworks without an NPDES permit, Naples's acquisition of a permit makes it clear that this violation is not reasonably expected to recur.  This moots CERF's claim for civil penalties.

**3.**

Lastly, CERF argues its request for attorneys' fees supports its continued interest in this action.  Generally, "[a]n interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Steel Co.*, 523 U.S. at 107 (simplified).  Admittedly, we've not always followed that rule when attorneys' fees could compel compliance with the Clean Water Act.  In one case, we held that "[b]ecause [the citizen plaintiff] claim[ed] entitlement to attorney's fees based on the alleged violations of the old permit, and [sought] to enforce the water quality standards independently of the effluent limitations, a live and genuine controversy remain[ed], so the case [was] not moot." *Nw. Env'tl Advocates v. City of Portland*, 56 F.3d 979, 990 (9th Cir. 1995).  But again, that case involved a different type of claim than the one here: the City of Portland allegedly violated the conditions of its existing NPDES permit, so the issuance of a new permit didn't remedy that alleged wrong. *Id.* at 982, 990.  As that is not the case here, we see no reason to depart from the rule that attorneys' fees cannot resuscitate an otherwise-moot case.

### III.

Because the Clean Water Act violation that CERF contends Naples committed can't reasonably be expected to recur, this case is moot. We vacate and remand with instructions to the district court to dismiss this case as moot. Each party shall bear its own costs on appeal.

**VACATED AND REMANDED.**

---

DONATO, District Judge, concurring:

The new opinion replaces the original opinion from which I dissented. My view in the dissent was that the majority was rushing to declare the case moot without adequate support in the record, which I concluded was inconsistent with governing law. *See*, *e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193-94 (2000) (acknowledging that while the closure of the incinerator facility at issue "might moot the case," nevertheless remanding the case for further consideration because "[t]he effect of both Laidlaw's compliance and the facility closure on the prospect of future violations is a disputed factual matter.").

The record has changed. We remanded the case to the district court on a limited basis, and the district court has now made additional factual determinations on two issues: (1) whether Naples has continued to pay the annual fee for the National Pollutant Discharge Elimination System permit to the Los Angeles Regional Water Quality Control Board, and (2) whether "it is absolutely clear" that Naples's alleged violations of the Clean Water Act "could not reasonably be

expected to recur." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987).

The district court determined that Naples "has continued to pay the annual fee for the NPDES permit" after receiving additional evidence on remand. The district court concluded that "it is absolutely clear that [Naples's] discharge of pollutants without a permit is not reasonably likely to recur," based on its review of the parties' submissions on remand and the trial record. Because I see no clear error in these findings, I concur that this case is moot. *See Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) ("We review the district court's dismissal on the grounds of mootness de novo, as a dismissal for lack of subject matter jurisdiction. We review factual determinations underlying the district court's decision for clear error." (citations omitted)).